**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Richard Dalton PINION,
Defendant-Appellant.**

No. 85–3005.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 6, 1985.

Decided Sept. 26, 1986.

Leslie Baker, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Steven T. Wax, Asst. Federal Public Defender, Portland, Or., for defendant-appellant.

Before KILKENNY and FLETCHER, Circuit Judges, and WEIGEL, District Judge.**

WEIGEL, District Judge.

Richard Dalton Pinion appeals his conviction for unarmed bank robbery. Pinion pled guilty following the district court's denial of his motion to suppress. He challenges his conviction on the grounds that he was arrested without probable cause and that his confession was involuntary.

I

FACTS

On July 18, 1984, the United States National Bank in Portland was robbed by a person described by witnesses as a white male, in his late twenties, about 5 feet 7 inches tall, with a slim to small build. Witnesses reported that the robber was wearing a long-sleeve red and white plaid shirt, jeans or tan pants, and a brown stocking cap or mask covering his face. Witnesses also reported that he carried a duffel bag, color not noted, that he was armed with a small silver handgun, and that he left the area on foot.

Police established a perimeter around the neighborhood south of the bank. Within a few minutes after the robbery, police officers responding to the radio dispatch began

** The Honorable Stanley A. Weigel, United States District Judge for the Northern District of California, is sitting by designation.

to receive reports from neighbors about the suspicious behavior of a man seen in the area. A boy told one officer he had seen a white male carrying a red bag walking across the street toward a wooden fence. Other residents stated that they had seen a man running through the blocks carrying a woman's purse, and that a man had used a neighbor's phone to call a taxi.

The dispatcher then relayed information received from a telephone complaint by a neighbor in the area. The complaint notified police that a white male, twenty years old, weighing 110 to 150 pounds, with reddish blond hair, a mustache, and possibly a beard, had just run through his yard claiming that a black man was chasing him.

Sergeant Foss, an eighteen-year veteran with the Portland police, was in the perimeter area. A neighbor approached Foss and told him about a man who had come to her door, asked to use her telephone, and told her a story of being chased by several black men. She pointed to Pinion, who was a half a block away, as the man she had just described.

Foss drove slowly past Pinion on his marked police motorcycle. He noticed that Pinion matched the general physical description of the robbery suspect, but that his clothing was different. Pinion was wearing a tan T-shirt and blue jeans.

Pinion walked quickly and ignored Foss as he drove by, even though Foss's police radio was playing loudly. Based on his experience, Foss found this behavior suspicious. Pinion was the only person he had seen near the perimeter who matched the physical description of the robbery suspect. Pinion was twenty-seven years old, 5 feet 9 inches, and weighed 150 pounds.

Foss circled back, stopped, and approached Pinion. At the same time, Officer Lish approached Pinion on foot from behind. Foss told Pinion to put his hands on his head, patted him down, advised him of his *Miranda* rights, and handcuffed him. Pinion said he understood his rights and asked to speak to his parole officer.

Foss briefly questioned Pinion about his story of being chased by several men. Officer Lish then drove Pinion by police car to a location where neighbors were waiting to identify the man seen running through the neighborhood. On the way, Officer Lish questioned Pinion further. The neighbors then identified Pinion as the man who had been running through the blocks.

Approximately one hour after the robbery, Pinion was taken to the police station for further questioning. Upon arrival, he was placed in a holding cell for about an hour. He was then taken to another room and interviewed by police detective David Rubey and FBI agent Tom LaFreniere. He was again advised of his *Miranda* rights and chose to waive them.

After approximately forty-five minutes of questioning, Pinion ended the interview. He later testified that he was upset because the agents ridiculed his explanation for his presence in the neighborhood. He asked for something to eat but was told there was no food at the station. He was then returned to his holding cell.

A few minutes later, Pinion stated that he wished to talk again. He then tearfully confessed to the bank robbery. The time from the initial stop until the confession totalled approximately four hours.

## II

## ANALYSIS

### A. *Probable Cause for Arrest*

Pinion first contends that he was arrested without probable cause, in violation of the fourth amendment. In order to determine whether probable cause existed to arrest Pinion, the Court must first determine the point at which arrest took place. The district court's finding that Pinion was in custody shortly after he was stopped by Sergeant Foss will be upheld unless it is clearly erroneous. *United States v. Wauneka*, 770 F.2d 1434, 1438 (9th Cir. 1985).

A defendant is in custody when, based upon a review of all the relevant

facts, "a reasonable innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave." *Id.* (quoting *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir.1981)). The district court held that a reasonable innocent person would conclude he was not free to go when he was approached by police who told him they wanted to question him about a bank robbery, handcuffed him, read him his *Miranda* rights, and transported him to another location in a police car. Because the restraint here was "in important respects indistinguishable from a traditional arrest," *Dunaway v. New York*, 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979), the district court's finding that Pinion was in custody is not clearly erroneous.

■ Pinion's warrantless arrest was legal only if, at the moment of arrest, facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense. *United States v. Howard*, 758 F.2d 1318, 1320 (9th Cir.1985). The ultimate conclusion whether probable cause exists is a mixed question of law and fact, which we review de novo. *United States v. Smith*, 790 F.2d 789, 791 (9th Cir.1986); *United States v. Greene*, 783 F.2d 1364, 1367 (9th Cir.1986). The district court's findings on the underlying facts are reviewed under the clearly erroneous standard. *Id.*

■ The district court found probable cause based upon the following factors. Pinion was stopped within a few blocks of the bank, less than a half an hour after the robbery. He matched the physical description of the robber, although his clothes were different. Sergeant Foss knew that a white male carrying a bag had been seen in the neighborhood[1] and that a person roughly matching Pinion's description had been seen running through yards minutes before. Pinion had been pointed out to Foss as a man acting suspiciously and trying to call a cab to leave the neighborhood. Pinion's behavior when Foss rode past with his police radio playing loudly was unusual, as was his story of being chased by two men. When stopped, Pinion spontaneously stated that he wished to speak to his parole officer.

Although this is a close case, we conclude, under the circumstances, that the officers had probable cause to arrest Pinion.

Pinion matched the physical description of the robber. Although the transmitted description was general, and in isolation would have been insufficient to establish probable cause, *see, e.g., United States v. Fisher*, 702 F.2d 372 (2d Cir.1983), it is a relevant factor in the probable cause determination. *See United States v. Gonzales*, 749 F.2d 1329, 1337 (9th Cir.1984); *United States v. Johnson*, 741 F.2d 1338, 1340 n. 2 (11th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985); *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983).

In addition to the physical description, police knew that Pinion had approached a resident in the vicinity of the robbery asking to use her telephone in order to call a cab. Pinion also fit the description of an individual whom other neighbors had seen running through nearby backyards, apparently being chased, and carrying a "bag" or "purse". The reference to a bag in the neighbors' descriptions linked the man running through the neighborhood to the bank robber, who was known to have been carrying a duffel bag when he left the bank.

Moreover, Sergeant Foss reasonably concluded that Pinion's proffered explanation

---

1. Although it is unclear from the record whether Foss actually heard the police dispatch that a white male carrying a red bag was seen in the neighborhood, an individual officer in a coordinated investigation need not have personal knowledge of all the relevant facts to effect an arrest; "[i]t is sufficient if the pool of objective data possessed by the group of agents acting in concert supplies the requisite probable cause." *United States v. Lomas,* 706 F.2d 886, 892 (9th Cir.1983), *cert. denied,* 464 U.S. 1047, 104 S.Ct. 720, 79 L.Ed.2d 182 (1984).

of his presence—that he had just been assaulted by two men—was not credible. Pinion's statement struck Sergeant Foss as incongruous with Pinion's earlier act of studiously ignoring Foss as he rode by with his police radio blaring. It is well-established that the courts should give due consideration to the experience of a trained observer. *United States v. Howard, supra,* at 1320.

Although ambiguous conduct of a person found in the proximity of the scene of a crime does not establish probable cause, Pinion's behavior in this case was more than ambiguous; it was suspicious and conformed to conduct of a suspect fleeing a robbery. *See United States v. Jackson,* 652 F.2d 244, 250–51 (2d Cir.) (reasonable suspicion ripened into probable cause when suspect, who generally matched physical description of perpetrator except for clothing, deliberately ignored police cars, and after being stopped by police officers, offered an inherently unbelievable explanation of where he had been and the use of his car trunk), *cert. denied,* 454 U.S. 1057, 102 S.Ct. 605, 70 L.Ed.2d 594 (1981). It was sufficient to "warrant a prudent person, or one of reasonable caution, [to believe], in the circumstances shown, that the suspect ha[d] committed ... an offense." *Greene, supra,* at 1367 (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979)).

We hold that under these circumstances, the relevant factors, considered together, established probable cause for arrest.[2]

### B. *Voluntariness of Confession*

■ Pinion also claims that his confession was involuntarily given. Pinion lists

several factors which he claims undermined the voluntariness of his statements: (1) the length of delay between his arrest and his confession; (2) the strong police control maintained throughout his detention; (3) "badgering" by Officer Lish while Pinion was in the car and later by Rubey and LaFreniere during the interrogation; (4) the statements by police that it would be better for him if he confessed; (5) his weakened condition due to hunger; and (6) the police agents' refusal to allow him to speak to his parole officer.

The government bears the burden of proving that the defendant's statements were voluntary. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972). To be voluntary a statement must be " 'the product of a rational intellect and a free will.' " *United States v. Tingle,* 658 F.2d 1332, 1335 (9th Cir.1981) (quoting *Blackburn v. Alabama,* 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960)). The test is whether under the totality of circumstances, the government obtained the confession by coercion or improper inducement. *Haynes v. Washington,* 373 U.S. 503, 513–14, 83 S.Ct. 1336, 1343–44, 10 L.Ed.2d 513 (1963).

Ninth Circuit cases decided since *United States v. McConney,* 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984),[3] have held that review of a district court determination of the voluntariness of a confession is for clear error. *See, e.g., United States v. Fouche,* 776 F.2d 1398, 1404 (9th Cir. 1985). It is not clear whether *Miller v. Fenton,* —— U.S. ——, 106 S.Ct. 445, 452–53, 88 L.Ed.2d 405 (1985) will have an effect on this standard of review. However, we need not resolve that question now be-

---

**2.** Although the district court thought it relevant, we do not consider Pinion's request to speak to his parole officer a legitimate factor contributing to a finding of probable cause here. Sergeant Foss had just told Pinion that he was wanted for questioning in a bank robbery, had frisked and handcuffed him, and read him his *Miranda* rights. Under these circumstances we do not think it surprising that a suspect would ask to speak to his parole officer. No inference of guilt should be drawn from such conduct.

**3.** *McConney* held that if the application of the rule of law to the facts involves an "essentially factual" inquiry, the clearly erroneous standard is to be employed. 728 F.2d at 1202. If the question requires consideration of legal concepts and the exercise of judgment about the values that animate legal principles, then de novo review is appropriate, particularly when constitutional rights are involved. *Id.* at 1202, 1204.

cause under either a de novo or a clear error standard, Pinion's statements were not involuntary.

The four hours that elapsed from arrest to confession was not an unreasonable length of time, especially in light of the fact that only an hour and twelve minutes of that time constituted actual interrogation. Furthermore, the police conduct during Pinion's detention was not particularly coercive.[4] Pinion was no stranger to the processes of arrest and detention[5] and had dealt with police officers and FBI agents before. In view of Pinion's experience with the arrest and detention processes, his treatment by police cannot be found to have been so intimidating as to have overborne his free will. *See Corn v. Zant*, 708 F.2d 549, 567 (11th Cir.1983), *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984), *vacated in part on other grounds*, 772 F.2d 681 (11th Cir.1985).

Moreover, there is no indication that police badgering broke down Pinion's determination to remain silent. Pinion knew he could discontinue interrogation at any time by invoking his right to remain silent, and in fact he did so, although he later chose to resume questioning. Statements by police that it would be better for Pinion if he confessed clearly did not induce him to confess. Pinion testified that he did not believe that anything he said would have any effect on the way he was treated.

Pinion's other claims—that he was hungry and that he was refused permission to speak to his parole officer—simply do not establish that his confession was coerced or improperly induced.[6]

### III

### CONCLUSION

Because the totality of the circumstances in this case establish probable cause for

arrest, and because Pinion's confession was not involuntary, the district court is AFFIRMED.

---

4. For example, Pinion was not arrested at gunpoint, even though he was suspected of armed robbery.

5. Pinion had been arrested at least ten times previously, once for bank robbery.

6. It is not clear from the briefs whether or not Pinion is also asserting that his waiver of the

*Miranda* rights was involuntary. For the reasons given in the discussion concerning the voluntariness of Pinion's confession, the Court finds that there was no error in the trial court's finding that Pinion's waiver of rights was voluntary.