The **PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,**

v.

**Benjamin M. ICHIYASU, Defendant-Appellant.**

No. 87–1121.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1987.

Decided Feb. 1, 1988.

Margaret E. Bean, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

William M. Goodman, Topel & Goodman, San Francisco, Cal., Richard Pipes, Carbullido & Pipes, Agana, Guam, for defendant-appellant.

Before FLETCHER, WIGGINS and NOONAN, Circuit Judges.

FLETCHER, Circuit Judge:

Appellant Ichiyasu appeals the decision of the appellate division of the district court of Guam affirming the Guam Superior Court's denial of his motion to suppress evidence and statements. We affirm.

## I. FACTS

On November 23, 1984, two women were struck by an automobile while standing on Route 1 in Agana, Gaum. The driver fled the scene. While on patrol, Officer John Thornton received several police radio dispatches describing the car and the direction it was traveling. The last of these indicated that the suspect vehicle had turned off Route 1 onto Route 11, a dead-end road that terminated at a pier. Thornton, who was close to the intersection of Routes 1 and 11, proceeded there at once, arriving in less than a minute. Upon reaching the intersection, he began to turn left onto Route 11 when he noticed a taxi with one passenger emerging from the dead-end road. As Thornton turned, he watched the taxi, and noted that the passenger, appellant Ichiyasu, was elderly, tall and slim and that he did not look at the police car. As the taxi turned onto Route 1, Thornton executed a U-turn and signalled the taxi to stop.

The officer first approached the taxi driver and asked where he had picked up his passenger; the driver said near the Piti power plant down Route 11. Thornton then approached Ichiyasu and asked him for some identification. Appellant gave him his driver's license, which Thornton took to his patrol car to record the information. Thornton then returned to the cab, where he asked Ichiyasu if he had a car and had been driving that night. Ichiyasu, avoiding eye contact with the officer, answered "no" to both questions.

At that point Thornton noticed fresh blood on the back of the appellant's hands. He asked appellant to step out of the cab. As appellant did so, Thornton saw that his clothes were messy, that his pant legs were soiled and that he had small spots of blood on his shirt. He took Ichiyasu into custody and transported him to the central precinct.

Once at the station, Thornton began to read Ichiyasu his *Miranda* rights. Appellant interrupted, saying that "he knew what his rights were and that he wanted his lawyer." Officer Thornton continued reading him his rights at which point Ichiyasu interrupted again saying "all he knew he was driving and he heard a loud noise and [ ] now he wanted his lawyer."

Appellant was charged with negligent homicide and leaving the scene of an accident. At a hearing on Ichiyasu's suppression motion, Guam Superior Court Judge Weeks ruled that the stop of the taxi was

reasonable, that reasonable suspicion existed to question appellant at the time, that there was probable cause to arrest him, and that Ichiyasu's statement made while Officer Thornton was reading him his *Miranda* rights was spontaneous and unsolicited and therefore admissible.

Ichiyasu entered a conditional plea of *nolo contendere* to leaving the scene of an accident with injuries. He was sentenced to six months probation and fined $4000. The Appellate Division of the District Court of Guam affirmed. This appeal followed.

## II. DISCUSSION

We have jurisdiction to review final orders of the district court of Guam pursuant to 28 U.S.C. § 1294(4).

### A. *The Stop of the Taxi*

■ The appellate division affirmed the superior court determination that there was reasonable suspicion to stop the taxi. We review *de novo* whether founded suspicion existed. *United States v. Sutton,* 794 F.2d 1415, 1425 (9th Cir.1986); *United States v. Maybusher,* 735 F.2d 366, 371 & n. 1 (9th Cir.1984). However, the facts upon which the trial court based its conclusion are upheld unless clearly erroneous. *United States v. McConney,* 728 F.2d 1195, 1200–01 (9th Cir.1984) (en banc).

Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police officers may make a brief, investigatory stop of an individual upon less than probable cause if, under the totality of the circumstances, they can point to articulable facts which support a reasonable suspicion that the person stopped is engaging in or about to engage in a crime. They also may make investigatory stops of moving vehicles upon reasonable suspicion. *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985); *United States v. Brignoni-Ponce,* 422 U.S. 873, 881–84, 95 S.Ct. 2574, 2580–82, 45 L.Ed.2d 607 (1975); *Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979).

■ In this circuit, we have expressed the standard as "reasonable" or "founded suspicion," *Sutton,* 794 F.2d at 1426; *United States v. Corral–Villavicencio,* 753 F.2d 785, 789 (9th Cir.1985), but we have held that there is no difference between the two. *See United States v. Collom,* 614 F.2d 624, 628 n. 3 (9th Cir.1979). Police also may effect an investigatory stop of a vehicle if they have founded suspicion that one or more of its occupants is wanted for a completed felony. *Hensley,* 105 S.Ct. at 680–81; *United States v. Greene,* 783 F.2d 1364, 1367 (9th Cir.1986). Founded suspicion must exist at the time of the stop. *United States v. Morrison,* 546 F.2d 319, 320 (9th Cir.1976).

Appellant argues that officer Thornton lacked founded suspicion when he stopped the cab, since he had observed neither suspicious activity nor any evasive conduct by the cab, and since the taxi did not meet the description of the hit-and-run car. Appellant also contends that his failure to look at officer Thornton does not give rise to founded suspicion.

We have held in the immigration context that avoiding eye contact with officials taken alone cannot justify an investigatory stop. *United States v. Mallides,* 473 F.2d 859, 861 (9th Cir.1973), *Nicacio v. INS,* 797 F.2d 700, 704 (9th Cir.1985) (amended opinion) (failure to acknowledge authorities not indicative of illegal alienage). But where such action is accompanied by other suspicious behavior or circumstances, avoiding the attention of law enforcement officers may be a factor to consider in determining whether founded suspicion exists. *See United States v. Nikzad,* 739 F.2d 1431 (9th Cir.1984).

Appellant is also correct in noting that innocent activity, in the absence of indications of criminal conduct, will not justify an investigatory stop. *United States v. Torres-Urena,* 513 F.2d 540 (9th Cir.1975) (per curiam); *see also United States v. Kerr,* 817 F.2d 1384 (9th Cir.1987).

■ However, police officers do not operate in a vacuum. Conduct that alone may appear innocent can be suspicious when viewed in the context of other information or surrounding circumstances that

the police are aware of. *United States v. Cortez,* 449 U.S. 411, 419, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *id.* at 422, 101 S.Ct. at 697.

This circuit has upheld investigatory stops where facts known to the police make apparently innocuous behavior suspicious to the police. In *United States v. Bautista,* 684 F.2d 1286 (9th Cir.1982), a police broadcast went out moments after a bank robbery describing the robbers and reporting the discovery of their getaway car on a certain side street. Two police officers concluded that the suspects might flee by proceeding to a through street leading out of the area, and proceeded to that street. A few minutes after the first transmission, they saw two men meeting the description about three blocks from the getaway car. Though it had been raining, the men appeared dry. *Id.* at 1287.

We upheld an investigatory stop of the suspects. We noted that at the time of the stop, the suspects were on a likely escape route only a short distance from the getaway car, were the only people in sight who matched the description, and were dry, which was consistent with having just left a car. *Id.* at 1289.

In this case, Officer Thornton knew that the hit-and-run suspect had driven down a particular dead-end road only minutes earlier. He saw a cab with an elderly well-dressed passenger emerging from the road which was in a non-residential area at two o'clock in the morning. He knew that sailors and power plant workers might be present down Route 11 at such an hour. An elderly, well-dressed man seemed out of place in the area. Appellant avoided Thornton's gaze as the police car and cab passed each other.

Although this evidence was not as strong as that in *Bautista,* where police had a description of the robbers, it was nonetheless sufficient to arouse Thornton's suspicion and to justify an investigatory stop. As in *Bautista,* Officer Thornton spotted appellant in the expected escape route moments after the crime. Given the hour and

the unlikeliness of someone of Ichiyasu's age and appearance being on Route 11, Officer Thornton had founded suspicion to stop the taxi.

■ Thornton limited his initial inquiry to where the driver had picked up his fare and who the passenger was. He did not ask the passenger to step out of the cab until he saw blood on his shirt and hands. This behavior comports with our mandate that the means used in investigatory stops be the least intrusive reasonably available. *Kraus v. County of Pierce,* 793 F.2d 1105, 1108 (9th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987).

Thornton, relying on objective, articulable facts, reasonably suspected Ichiyasu might be the hit-and-run driver. This justified the stop at its inception under *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879 as extended by *Hensley,* 105 S.Ct. at 680–81. He limited his questioning to the circumstances that justified the stop in the first place also in keeping with *Terry. Id.* [1]

### B. *Probable Cause for Arrest*

■ Both parties concede that the arrest occurred when Thornton asked Ichiyasu to accompany him to the station. The superior court found, and the district court affirmed, that probable cause existed to arrest Ichiyasu once Thornton had seen the fresh blood on Ichiyasu's hands and clothes. The ultimate conclusion as to whether probable cause exists is a mixed question of law and fact, to which we apply *de novo* review. The underlying facts, however, are reviewed under the clearly erroneous standard. *United States v. Greene,* 783 F.2d 1367.

■ Probable cause to arrest arises when police have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect has committed a crime. *United States v. Moses,* 796 F.2d 281, 283 (9th Cir.1986); *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). Some objective evidence must support their belief, *McKenzie v. Lamb,* 738 F.2d 1005,

---

1. The appellate division also upheld the stop on the ground that it was a proper use of a roadblock. Since the stop was justified as an investigatory stop, we need not review this alternative basis.

1008 (9th Cir.1984), but that evidence may be evaluated with "due consideration to the experience of a trained observer." *United States v. Pinion,* 800 F.2d 976, 980 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1580, 94 L.Ed.2d 770 (1987).

In *Pinion,* moments after a bank was robbed, police established a perimeter around the neighborhood of the bank. They began receiving reports from neighbors of suspicious behavior of a man in the area meeting the description of the robber. Driving slowly past the suspect, the officer noticed that his shirt did not match the robber's, but he also noted that the man would not look at him, and that he was the only person the officer had seen who fit the robber's description. He arrested the man. *Id.* at 977–78.

Although we found the facts in *Pinion* constituted a close case, we upheld the arrest as being supported by probable cause. We considered important: the suspect's spatial and temporal proximity to the bank and the robbery; his physical match to the description of the robber; his attempts to leave the neighborhood; and his refusal to look at the passing police officer. *Id.* at 979.

As in *Pinion,* the arresting officer here found the appellant near the last reported location of the suspect within minutes after the crime. Appellant was trying to leave the area, and would not look at the officer. Although Thornton did not have a description with which to compare Ichiyasu, he did know it was unusual for a man like Ichiyasu to be on Route 11 at that hour. Perhaps most important, Ichiyasu had fresh blood on his hands and clothes, consistent with the minor injuries an escaping hit-and-run driver could reasonably be expected to have suffered. The mud on his pants helped confirm the impression that this well-dressed taxi passenger had recently been engaged in activity that took him off the highway.

Founded suspicion may ripen into probable cause as police discover additional facts or as incidents occur after the stop. *Greene,* 783 F.2d at 1368. The discovery of fresh blood on Ichiyasu persuaded Thornton that Ichiyasu had been involved in the accident. With this added fact reasonable suspicion ripened into probable cause in this case.

## C. *The Admissibility of Ichiyasu's Statement*

■ Appellant seeks suppression of his statement given during the reading of his rights. He contends that "[w]hile not an interrogation in the literal sense, Thornton's continued reading coerced [him] into making a statement after he had requested his lawyer." Brief of Appellant at 25.

Whether police statements or actions amount to "interrogation" is a factual determination reviewed under the clearly erroneous standard. *United States v. Brady,* 819 F.2d 884, 886 (9th Cir.1987); *United States v. Wauneka,* 770 F.2d 1434, 1438 (9th Cir.1985).

It is well settled that once an accused has requested counsel, police must cease all interrogation until an attorney has been provided. *Arizona v. Mauro,* — U.S. —, 107 S.Ct. 1931, 1934, 95 L.Ed.2d 458 (1987); *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966); *United States v. Nordling,* 804 F.2d 1466, 1470 (9th Cir.1986); *United States v. Thierman,* 678 F.2d 1331, 1334 (9th Cir.1982).

In this case, Ichiyasu demanded an attorney as soon as Officer Thornton began reading him his rights. The officer resumed reading the rights; it was at this point that Ichiyasu made the statement he now seeks to suppress. We must decide, then, whether the reading of rights can, itself, constitute interrogation.

The Supreme Court defined "interrogation" in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), to encompass more than express questioning. It also includes "any words or actions on the part of the police (*other than those normally attendant to arrest and custody* ) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. at 1689 (footnotes omitted) (emphasis added).

The reading of *Miranda* warnings most certainly is an action "normally attendant to arrest," not to be considered police coercion. *See also Arizona v. Mauro,* —— U.S. ——, 107 S.Ct. 1931, 1936, 95 L.Ed.2d 458 (1987) (where defendant was "not subjected to compelling influences, psychological ploys, or direct questioning," his volunteered statements cannot be considered result of police interrogation); *Thierman,* 678 F.2d at 1334. Indeed, the very act of reading suspects their *Miranda* rights "reduces the likelihood that ... suspects would fall victim to constitutionally impermissible practices of police interrogation...." *New York v. Quarles,* 467 U.S. 649, 656, 104 S.Ct. 2626, 2632, 81 L.Ed.2d 550 (1984). We cannot accept appellant's contention that the warnings designed to protect defendants from coercion were themselves the instrument of his coercion. Officer Thornton was merely following proper procedure in reading Ichiyasu his rights; he would have been derelict not to complete the reading.

The conviction is AFFIRMED.