Decided August 25, 1989

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, | ) ) ) | CRIMINAL CASE NO. 89-106 |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | OPINION |
| CONRADO S. CRISOSTIMO, | ) ) | |
| Defendant. | ) ) ) | |

On April 7, 1989 police officers and agents of the Drug Enforcement Task Force executed a search warrant at the premises described as the residence of Ray Manahane in the Fina Sisu Housing Area.[1]/ The search warrant was based upon probable cause to believe that marijuana was being concealed at the Manahane residence and authorized a search of "the premises and persons described...."

Approximately 10 to 12 armed officers participated in the execution of the Manahane search warrant. Defendant Conrad

---

[1]/ A separate search warrant was issued for Manahane's vehicle.

**949**

Crisostimo and three other individuals were outside the Manahane residence when the officers arrived to execute the search warrant. After surrounding the house and with weapons drawn, the officers ordered Crisostimo and the other individuals into the garage area of the 'Manahane residence. Prior to this, the defendant was observed holding a blue vinyl bag and at the time he was ordered into the garage, defendant carried the bag into the garage. Officer Norita then patted down the outside of defendant's clothing in order to ascertain if he was armed. No weapons were found. Prior to being searched defendant placed his bag on a table in the garage. After frisking defendant, Officer Norita picked up defendant's bag and squeezed it in an attempt to determine its contents. No hard objects could be felt in the bag. Officer Norita then opened the zipper on the main compartment of the bag and observed what he believed to be marijuana. At no time did defendant consent to the search of his bag.

After opening the bag Officer Norita asked defendant what was inside. Defendant responded that it was marijuana and was orally advised by Officer Norita that he was under arrest. Officer Norita then asked defendant for the keys to his vehicle which was parked outside the Manahane residence. After receiving the keys Officer Norita asked defendant if there was anything defendant wanted to tell him about his vehicle. Defendant then told the officer that there was more marijuana in his vehicle. At no time prior to this questioning was defendant advised of

**950**

his constitutional rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602 (1966).

Defendant's vehicle was then impounded and on April 10, 1989 a search warrant was issued for his vehicle. The affidavit in support of the search warrant was largely based on the results of the search of defendant's bag and his inculpatory statements made to the police. The vehicle was searched and marijuana was discovered therein.

Defendant has now moved to suppress the contents of his bag, any statements made by him and the contents of his vehicle.

### 1. Search of Defendant's Bag.

The search warrant in this case authorized the search of Ramon Manahane and his residence. The government contends that defendant's bag was within the area to be searched and was therefore covered by the Manahane search warrant. The government attempts to support its contention that this was not a warrantless search by asserting that defendant never claimed ownership of the bag. This assertation is not supported by the facts. Indeed, it is clear and uncontradicted that the police knew from the very outset the bag belonged to the defendant.2/

Testimony indicated that defendant carried the bag with him into the garage area of the Manahane residence.

---

2/
It is also noted that the inventory list on the Manahane search warrant indicates that the blue bag was owned by defendant.

**951**

Defendant placed the bag on a table in the garage when he was subjected to a pat down search for weapons. When the frisk of defendant was complete, he sat down at the table directly in front of the bag.

After Officer Norita opened the bag and saw what he believed to be marijuana, he immediately informed defendant that he was under arrest. The fact that the other three individuals being detained in the garage were not arrested at that time clearly indicates that the officer knew that the bag belonged to defendant. This is self-evident in light of the fact that defendant carried the bag into the garage with him.

The cases cited by the government do not require a different conclusion. In United States v. Johnson, 475 F.2d 977 (D.C. Cir. 1973) a search of a visitor's purse pursuant to a search warrant for the premises was found not to be unreasonable where officers never observed the purse in the possession of its owner. In Johnson, the purse was found sitting on a table when the officers entered the premises. As such, the purse could not be considered an extension of the owner's person. Thus, the court concluded that:

> "The invasion of appellee's privacy was therefore of a lesser degree than if she had been subject to a search of her clothing or of objects being held by her." Id. at 979.

In this case, police observed defendant holding the bag which was subsequently searched. Therefore, this bag must be considered an extension of his person.

Likewise, in Carman v. State, 602 P.2d 1255 (Alaska 1979), police entered an apartment pursuant to a search warrant and found a purse lying on the floor. The officers opened the purse and discovered evidence. Subsequently, it was learned that the purse belonged to Carman. The court in Carman found no expectation of privacy in Carman's purse since it was lying on the floor in an area subject to a valid search warrant. In the case at bar, defendant's bag was not merely lying about the Manahane premises, it was being held by defendant until he placed it on the table in the garage in order to facilitate Officer Norita's pat down search of his person.

It has been repeatedly recognized that containers such as purses, shoulder bags, backpacks and suitcases are so closely associated with one's person that a search of them must be supported by a warrant which satisfies the particularity requirement, or by one of the exceptions to the warrant requirements. United States v. Robertson, 833 F.2d 777, 784 (9th Cir. 1987), (search of visitor's backpack not authorized by search warrant); Arkansas v. Sanders, 442 U.S. 753, 762, 99 S.Ct. 2586, 2592 (1979) (warrantless search of suitcase taken from car not justified by "automobile exception" to warrant requirement); United States v. Branch, 545 F.2d 177, 182 (D.C. Cir. 1976) (search of shoulder bag not authorized by search warrant for apartment); State v. Przeradski, 677 P.2d 471, 476 (Hawaii App. 1984) (search of beach bag not authorized by search warrant). Clearly, a visitor retains a legitimate

**953**

expectation of privacy in belongings when he or she enters the premises to be searched. United States v. Micheli, 487 F.2d 429, 432 (1st Cir. 1973).

Visitors who are located within the physical boundaries of premises described in a search warrant and who have chosen to protect their legitimate expectations of privacy by carrying containers which are personal to them such as purses, handbags, bookbags or shoulder bags cannot have these items searched unless probable cause or exigent circumstances exist. See, Robertson, supra, 833 F.2d at 785. In this case, the government cannot point to any independent probable cause existing at the time of the search which would lead them to believe that defendant's bag contained contraband.

If the officers had probable cause[3]/ to believe that defendant's bag contained contraband, they should have obtained a warrant which described the bag and which would have authorized a search of its contents. See, Arizona v. Hicks, __U.S.__, 107 S.Ct. 1149, 1155 (1987).

2. Safety of the Officers.

A. Seizure versus Arrest.

The government next contends that defendant's initial detention was a legitimate "Terry stop" for

_____

[3]/ The police might have detained the bag itself for a reasonable time, United States v. Place, 462 U.S. 596, 703, 103 S.Ct. 2637, 2642 (1983) and subjected it to a "canine sniff" in order to determine if probable cause existed sufficient to obtain a search warrant for the bag, United States v. Jacobson, 460 U.S. 109, 124, 104 S.Ct. 1653, 1662 (1984).

which only reasonable suspicion of criminal activity is required. Terry v. Ohio, 392 U.S. 1, 22-23, 88 S.Ct. 1868, 1880-81 (1968). A Terry stop involves no more than a brief stop, interrogation and, under proper circumstances, a brief check for weapons. United States v. Robertson, supra, 833 F.2d at 780. Beyond such a brief and narrowly circumscribed intrusion, an arrest occurs, for which probable cause is required. Kraus v. City of Pierce, 793 F.2d 1105, 1108-09 (9th Cir.), cert. den. __U.S.__, 107 S.Ct. 1571 (1987).

Whether an arrest has occurred depends on all the surrounding circumstances, including the extent to which liberty of movement is curtailed and the type of force or authority employed. United States v. Patterson, 648 F.2d 625, 632 (9th Cir. 1981). The proper focus when determining coerciveness or restraint sufficient to constitute an arrest is not on the subjective belief of the arresting officer, but on the perspective of the person seized. United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1295 (9th Cir. 1988). The ultimate question is whether, in view of all the circumstances, a reasonable person would believe himself to be under arrest. Robertson, supra, 833 F.2d at 780.

In this case, it must be concluded that the detention of defendant at gunpoint was an arrest which required probable cause. Defendant was confronted by several police officers, all of whom were carrying weapons drawn and ready to fire. The restriction of defendant's liberty was complete upon his being

ordered into the garage of the Manahane residence. See, Robertson, supra, 833 F.2d at 781 (detention at gunpoint and encirclement constituted arrest); Kraus, supra, 793 F.2d at 1108-09 (encirclement by officers with guns drawn was arrest); United States v. Coates, 549 F.2d 1303, 1305 (9th Cir. 1977) (ordering defendant to stop and prostrate himself at gunpoint constituted arrest); United States v. Ramos-Zaragosa, 516 F.2d 141, 144 (9th Cir. 1975) (holding defendants at gunpoint amounted to arrest). Generally, a reasonably innocent person in the circumstances presented here would not have felt free to leave after a brief questioning. See, United States v. Pinion, 800 F.2d 976, 979 (9th Cir. 1986). Indeed, Officer Norita testified that at no time after defendant was confronted was he free to leave.

Since defendant was effectively arrested prior to the search of his bag, this is not a "Terry stop" situation. Yet even if defendant could be construed as not being under arrest at this point, the search of his bag was not a legitimate weapons search. Officer Norita testified that he picked the bag up and held it in his hands. Once defendant's bag was in the possession of the officers, any danger that defendant would take a weapon from the bag completely subsided. United States v. Calandrella, 605 F.2d 236, 250 (6th Cir. 1979). Further, Officer Norita testified that he felt the outside of the bag "squeezing it down" and felt nothing hard inside which would indicate the presence of a weapon. Thus, it appears that the

**956**

government's claim that this was a weapon's search is merely an after-the-fact attempt to justify a search for which no exigent circumstances existed.

Although the police could detain defendant for a reasonable time while a "proper" search is conducted, <u>Michigan v. Summers</u>, 452 U.S. 692, 705, 101 S.Ct. 2587, ⁻595 (1981), they could not search his bag because that bag was not part of the premises described in the warrant and any danger that defendant would take a weapon from the bag was alleviated when Officer Norita took possession of the bag.

B. **Probable Cause to Arrest Defendant.**

Since defendant was arrested when officers encircled him, the Fourth Amendment requirements of probable cause attached at that point. <u>Florida v. Royer</u>, 460 U.S. 491, 502, 103 S.Ct. 1319, 1326 (1983). Probable cause exists when, at the time of arrest, the agents knew reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused has committed or was committing a crime. <u>Pinion</u>, <u>supra</u>, 800 F.2d at 979.

In the instant case, police officers possessed a valid search warrant for the Manahane residence. This search warrant is completely devoid of any indication that defendant was involved in any criminal activity. Defendant's mere presence on the premises, without more, cannot support his arrest under these circumstances. <u>See</u>, <u>Robertson</u>, <u>supra</u>, 833 F.2d at 782. Although the police had probable cause to believe that criminal

**957**

activity was afoot at the Manahane residence, this was not enough to justify the arrest of defendant. Where the standard for the seizure of a person is probable cause, that seizure must be supported by probable cause particularized with respect to that person. Ybarra v. Illinois, 444 U.S. 85, 93, 100 S.Ct. 338, 343 (1979) (warrant to search a place cannot be construed to authorize a search of every individual in that place). This is because the Fourth Amendment protects the legitimate expectations of privacy of persons, not places. Rakas v. Illinois, 439 U.S. 128, 138-143, 148-149, 99 S.Ct. 421, 427-430, 433 (1978). Thus, the principles announced in Ybarra are equally applicable to public and private places since the Fourth Amendment rights of the individual, no matter where he or she may be, are determinative. State v. Lambert, 710 P.2d 693, 697 (Kan. 1985); State v. Weber, 668 P.2d 475, 477 (Ore.App. 1983).

Every person who came onto the premises of Ramon Manahane on April 7, 1989 possessed constitutional protection against an unreasonable search or an unreasonable seizure. Robertson, supra, 833 F.2d at 783. Beyond mere proximity to Manahane and his residence, the government can identify no probable cause which would lead a prudent person to believe that defendant had committed or was committing a criminal offense. Thus, defendant's constitutional rights were intruded upon as the officers had no probable cause for his arrest. See, Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225-26 (1964).

### 3. Statements of Defendant.

The Fifth Amendment privilege against self-incrimination protects the individual from being compelled to provide evidence against himself. In *Miranda v. Arizona*, supra, the United States Supreme Court established procedural safeguards to protect the exercise of this privilege from the inherently coercive effects of custodial interrogation. Custodial interrogation consists of "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*, 384 U.S. at 444, 86 S.Ct. at 1612.

In determining whether an individual is in custody for *Miranda* purposes, the totality of the circumstances must be considered. *Minnesota v. Murphy*, 465 U.S. 420, 429-34, 104 S.Ct. 1136, 1143-46 (1984). The *Miranda* principles are applicable where a suspect is not free to leave. *Orozco v. Texas*, 394 U.S. 324, 327, 89 S.Ct. 1095, 1097 (1969).

As previously stated, defendant was not free to leave the Manahane garage when Officer Norita began questioning him about the contents of his bag and his vehicle. Clearly, defendant was in custody at that time.

It must next be determined if Officer Norita's questioning amounted to "interrogation." Interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should

**959**

know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90 (1980). In the case at bar, Officer Norita's questions, "What is this?" (referring to the contents of defendant's bag) and "Is there anything you would like to tell me about the car?", were express questions which sought to elicit responses from defendant.

It is settled law that statements obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal correction between the illegal arrest and the statements so that the statements are sufficiently an act of free will to purge the primary taint. Taylor v. Alabama, 457 U.S. 687, 690, 102 S.Ct. 2664, 2667 (1982). In this case, no events intervened between defendant's arrest and the statements made by him in response to Officer Norita's questions which would purge the taint resulting from the failure to inform defendant of his constitutional rights. Therefore, defendant's answers to these questions must be suppressed.

4. **Validity of the Search Warrant for Defendant's Vehicle.**

The evidence seized during the illegal warrantless search of defendant's bag and all statements made by defendant prior to being informed of his Miranda rights are tainted and should not have been included in the subsequent affidavit for the search warrant for defendant's vehicle. Wong

*Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407 (1963). The mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or evidence seized pursuant to the warrant. *United States v. Driver*, 776 F.2d 807, 812 (9th Cir. 1985). The court reviewing the affidavit should excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant. *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987).

After excising all references to the items taken from defendant's bag and any statements made by defendant concerning the contents of his vehicle, the court is left with the following untainted facts:

(1) On April 7, 1989 a search warrant was executed on the residence of Ray Manahane; (2) At the time the search warrant was executed, defendant was present on the premises; (3) Defendant's vehicle was parked in Manahane's driveway; (4) Marijuana and cash were confiscated from Manahane's residence; (5) Manahane told police that he had sold defendant six bags of marijuana on April 4, 1989; and (6) Manahane stated that defendant was at his residence to buy marijuana when the search warrant was executed.

**961**

The six factual assertions set out above are insufficient to establish probable cause for the issuance of a warrant to search defendant's vehicle. There is simply no evidence that defendant's vehicle contained contraband. Although police officers may have suspected that defendant's vehicle was involved in narcotics-related activity, mere suspicion does not give rise to the level of probable cause. United States v. Condo, 782 F.2d 1502, 1507 (9th Cir. 1986).

Finally, the government contends that since officers acted in good faith when conducting the search of defendant's vehicle in reasonable reliance on a warrant issued by a neutral and detached magistrate, the evidence obtained should not be suppressed. United States v. Leon, 468 U.S. 897, 900, 104 S.Ct. 3405, 3409 (1984). In Leon, the officer presented lawfully obtained evidence to a neutral magistrate. The magistrate erroneously found that this evidence established probable cause and issued a warrant. Subsequently, a reviewing court ruled that the evidence presented to the magistrate did not establish probable cause and the warrant should not have been issued. The evidence obtained in the search warrant was deemed admissible by the Leon Court, however, because the officer acted in good faith. The officer acted in good faith both in gathering and presenting evidence to a neutral magistrate. The only error in the entire process was the magistrate's erroneous finding that the evidence established probable cause.

The instant case differs in that an illegal warrantless search was conducted and the tainted evidence obtained in that search was presented to a magistrate in an effort to obtain a search warrant. The search warrant was issued on the basis of this tainted evidence. Thus, the constitutional error was made by officers of the Drug Task Force in this case, not by the magistrate as in Leon. The Leon court made it clear that the exclusionary rule should apply if the exclusion of evidence would alter the behavior of individual law enforcement officers or the policies of their department. Id., at 918, 104 S.Ct. at 3418. Conducting an illegal search and including evidence found in that search in an affidavit in support of a warrant is an activity that the exclusionary rule was meant to deter. Vasey, supra, 834 F.2d at 789. Further, a magistrate's consideration of the evidence presented in an affidavit for a search warrant does not sanitize the taint of the illegal warrantless search. Id. Therefore, all evidence obtained from defendant's vehicle pursuant to the search warrant must be suppressed.

This opinion sets forth the reasoning behind the suppression of evidence pursuant to the Court's Order of August 24, 1989.

Dated at Saipan, MP, this 25ᵗʰ day of August, 1989.

Robert A. Hefner, Presiding Judge

963