NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0520n.06

Case No. 21-1268

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 16, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FELICIA ALLEN, Individually and as Personal Representative of the Estate of Arturos Turner, Deceased; ESTATE OF ARTUROS TURNER, | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | |
| CITY OF ECORSE, MICHIGAN; AMJAD ISSA; CRAIG CIESZKOWSKI; KEVIN BARKMAN, | ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | |

BEFORE: SUTTON, Chief Judge; SILER and READLER, Circuit Judges.

SUTTON, Chief Judge. Felicia Allen sued the City of Ecorse, Michigan, and three policemen after the officers entered her home without a warrant and arrested her husband. The district court granted summary judgment to the defendants. It determined that the officers reasonably relied on the hot-pursuit exception to the warrant requirement to enter the home and had probable cause for the arrest. We affirm.

After midnight on April 15, 2017, Officers Craig Cieszkowski and Amjad Issa patrolled a neighborhood in Ecorse. Around 2:00 am, they spotted a black male wearing a white hooded sweatshirt engaging in a "hand-to-hand transaction" that they suspected involved drugs. R.34-5

at 39. Soon after, they watched the individual driving a moped without regard for traffic signs. The officers activated their emergency lights and siren and tried to stop him. Instead of complying, the driver accelerated. He began to chart an unwieldy course, swerving between oncoming vehicles and driving over sidewalks. He lost control of the moped and fled on foot.

Issa got out of the car and ran after him, yelling directions over the radio. He lost sight of the man, but Officer Edward Otis (not a defendant here) radioed that he saw someone matching the suspect's description run into a house on West Goodell Street.

The officers went to Otis's location. A man standing on the front porch of the house next door stated, "he went in there," indicating 15 West Goodell Street. *Id.* at 57–58. A patrolman secured the rear exit.

The officers forced entry. They found plaintiffs Felicia Allen and Arturos Turner in their bedroom in the basement. Turner was not wearing a white sweatshirt and said he had been sleeping. Officers arrested Turner for fleeing from the police, a felony. *See* Mich. Comp. Laws § 750.479a(2). The State later dropped the charges.

Turner, as it happens, died the next year. Allen sued the City and three officers on her own behalf and on behalf of Turner's estate. Her § 1983 claim alleged that the entry into the house and the arrest violated the Fourth Amendment. She also raised false-arrest and false-imprisonment claims under Michigan law.

The district court granted summary judgment to the officers and the City. It held that Allen's § 1983 claims could not proceed because no constitutional violation occurred. It dismissed the state-law claims, too, on the ground that the officers had probable cause to arrest Turner.

*Fourth Amendment claims against the officers.* We review the district court's entry of summary judgment with fresh eyes, drawing all factual inferences in Allen's favor. *Jones v. Clark*

*County*, 959 F.3d 748, 756 (6th Cir. 2020). To prevail, Allen must prove that the officers violated Turner's and her Fourth Amendment rights and that those rights were clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 243–44 (2009).

Start with the home entry. The Fourth Amendment typically requires officers to obtain a warrant or permission before they enter a home. *Lange v. California*, 141 S. Ct. 2011, 2016 (2021). But exceptions exist. One is that an officer may enter a home in an emergency. *Id.* The "hot pursuit of a fleeing felon" is one kind of "emergency" covered by this exception to the warrant requirement. *Goodwin v. City of Painesville*, 781 F.3d 314, 330 (6th Cir. 2015); *see United States v. Santana*, 427 U.S. 38, 42–43 (1976).

This line of cases defeats Allen's claims with respect to the home entry. After suspecting an individual was engaged in a drug transaction, the officers watched him drive away on a moped and dangerously disregard traffic signals, after which they turned on their sirens and attempted to stop him. In response, he fled. And when his moped crashed, he fled some more. Fleeing after an officer's lawful order to stop is a felony in Michigan. Mich. Comp. Laws § 750.479a(2). The moped driver was a fleeing felon, and a persistent and reckless one at that, and the officers reasonably sought to stop him. Their actions did not violate the Fourth Amendment.

Allen's contrary arguments come up short. She argues that the hot-pursuit exception does not apply because the flight did not follow an arrest, only an attempted stop. No case says that to our knowledge, and Allen offers nothing to show otherwise. At least one U.S. Supreme Court decision undercuts this argument. *See Stanton v. Sims*, 571 U.S. 3 (2013) (per curiam). In that case, the Court refused to find a violation of clearly established law where an officer found a person's "behavior suspicious," directed him to "stop," and, after the suspect "quickly walked" through a gate, followed him into an enclosed front yard and detained him. *Id.* at 4.

*Coffey v. Carroll* does not change matters. 933 F.3d 577 (6th Cir. 2019). Officers went to the scene of an attempted break-in. *Id.* at 582. They followed a trail of snowy footprints to a home and entered. *Id. Coffey* held that the hot-pursuit exception did not authorize the entry. *Id.* at 587. But it did not inject an arrest requirement into the analysis. Notably, the officers did not witness that crime. And their pursuit was not immediate but occurred "sometime later." *Id.* at 586. *Coffey* stands for the reality that the pursuit must actually be hot, rather than "lukewarm at best." *Id.* That today's incident started as a minor traffic offense helps Allen in one sense. But the ensuing flight became a felony, and a dangerous one at that. The officers had ample reasons to chase the driver and follow him into Allen's house.

Allen also suggests that the driver was not a fleeing felon, arguing that no objective evidence indicates that he knew the officers were trying to stop him. But she fails to come to grips with the glaring reality that the officers activated the patrol car's siren and overhead lights. After that, the driver accelerated and fled. And when his moped crashed, he fled again. On this record, the officers could reasonably believe that the driver knew the officers were trying to stop him and that his persistent flight was itself evidence that something was awry. *Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000).

Allen highlights two potential factual disputes as standing in the way of summary judgment. The first concerns events immediately before the attempted traffic stop. The officers say that they saw the moped driver participate in a "hand-to-hand transaction" that looked like a drug transaction before they saw the traffic violation. R.34-5 at 39. Allen, pointing to the police report's omission of this occurrence, contends that they invented it in the incident's aftermath. But the absence of the item in the police report does not by itself undermine the officers' testimony as to why they were watching the moped driver and what they saw. In addition, the driver fled after

a lawful order to stop, regardless of whether he bought drugs first. The officers reasonably believed at that point that he had committed a felony.

The second claimed factual dispute arises from Allen's statement that Turner was in bed all night. But she does not point to any evidence that undermines the officers' account that they pursued *someone* to her door. And she does not offer anything to rebut the officers' declarations that they heard Officer Otis and her neighbor say they saw the fleeing suspect enter her house. Her assertions that Turner was in bed do not foreclose the critical aspects of the officers' account. Someone else may have run through the front door that night. Indeed, Allen makes no argument about the whereabouts or appearance of her godbrother, who was in the house when police arrived. Or perhaps the reckless moped driver entered a different home, and Officer Otis and the neighbor simply erred. Even still, Officers Cieszkowski, Issa, and Barkman—the only individual defendants whom Allen sued—each recount that Officer Otis reported over the radio that the suspect entered the home that they entered. Allen's evidence does not call into question that they operated under this belief. The evidence does not create a genuine dispute of any fact that is material to whether the officers acted reasonably.

Now turn to Turner's arrest. Officers may arrest a suspect where there is probable cause to believe he committed a crime. *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 620 (6th Cir. 2021). The question is whether, based on all of the facts and circumstances, the officers had an "objectively reasonable basis" for concluding that Turner committed a crime. *United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005) (quotation omitted). The answer is that they did.

At the time the moped driver fled, the officers had reason to believe that he, whoever he was, had committed a felony. Officer Otis and Allen's neighbor both reported that they saw the suspect run into a home. Acting on that tip, the officers followed. They found Turner, who

matched the suspect's physical description, inside. It was reasonable for them to believe they had found what they were looking for: the fleeing felon.

Allen objects to the officers' dependence on the directions provided by her neighbor, who refused to identify himself, and she questions his reliability, relying on *Florida v. J.L.*, 529 U.S. 266 (2000). But *J.L.* says that officers may base their actions on reliable tips, even if the tipster remains unnamed. *Id.* at 270–71. The basis for the neighbor's knowledge was clear; he was an eyewitness. And Officer Otis corroborated his account over the radio. The officers reasonably factored the neighbor's description of the suspect's movements into their probable cause determination.

Allen insists that Turner was in bed all night and that he did not own a white hooded sweatshirt. These are all fair points. But they do not detract from the other evidence allowing the officers to believe reasonably that the suspect was inside. Allen does not argue that another occupant of the house better matched the suspect's description. Circumstantial evidence made Turner the most likely culprit in the officers' eyes, white sweatshirt or not. *King v. City of Eastpointe*, 86 F. App'x 790, 808–09 (6th Cir. 2003); *see also United States v. Pinion*, 800 F.2d 976, 979 (9th Cir. 1986). The Fourth Amendment does not require an officer to be right, only to be reasonable.

*Municipal liability.* Allen also brings a claim against the City. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). But the absence of a constitutional violation, much less a clearly established violation, defeats this claim. *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 698 (6th Cir. 2018) (no constitutional violation); *see also Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017) (no clearly established violation).

*State-law claims.* In Michigan, false-arrest and false-imprisonment claims require a showing that the officers lacked probable cause. *Lewis v. Farmer Jack Div., Inc.*, 327 N.W.2d 893, 894 (Mich. 1982); *Gooch v. Wachowiak*, 89 N.W.2d 496, 499–500 (Mich. 1958). The reality that the officers had probable cause to arrest Turner resolves these claims as well.

*Allen's claims as an individual.* Allen argues that the district court dismissed her individual claims even though the defendants moved for summary judgment as to the claims of Turner's estate only. But the defendants asked the district court to dismiss the claims "in their entirety." R.21 at 6. Her claims at any event rise and fall with the estate's claims.

We affirm.