RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0181p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

NICHOLAS SAMUEL COFFEY,

*Plaintiff-Appellee,*

*v.*

ADAM CARROLL; MICHAEL PRANGER; JAMES PILCHAK,
*Defendants-Appellants.*

No. 18-1314

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-13081—Sean F. Cox, District Judge.

Decided and Filed: August 5, 2019

Before: MERRITT, THAPAR, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** John C. Clark, GIARMARCO, MULLINS & HORTON, PC, Troy, Michigan, for
Appellants. Thomas M. Loeb, Farmington Hills, Michigan, for Appellant.

───────────────

## OPINION

───────────────

READLER, Circuit Judge. The qualified immunity doctrine serves to shield public
officials—oftentimes, police officers—from liability and harassment for reasonable acts
undertaken in the line of duty. As the doctrine affords a public official immunity from the costs
of litigation, federal courts have an obligation to weigh the issue as early as practicable, and
certainly no later than summary judgment. By the same token, where the law is settled and the

record is murky as to whether an official has acted reasonably when judged against that settled legal standard, the claims are often left for resolution at trial.

This appears to be such a case. In the proceedings below, three City of Taylor (Michigan) police officers were accused by Plaintiff Nicholas Coffey of violating his constitutional rights while arresting him for attempted larceny. The officers believe they are entitled to qualified immunity regarding the events surrounding the arrest. In a well-reasoned opinion, the district court found that material questions of fact permeated the case, and therefore denied summary judgment to the officers. Following an independent review of the record, we **AFFIRM** the district court's order.

## I. BACKGROUND

A caller to 911 reported that two men had approached her parked car, and that one of them tried to break in. Officers Adam Carroll, Michael Pranger, and James Pilchak were dispatched to the scene. The 911 caller gave the officers a lead in tracking the purported burglars. Mother Nature did the rest. Because the attempted break in took place with fresh snow on the ground, the officers could track prints in the snow revealing the men's escape. The incriminating trail of snowprints led the officers to the home of Nicholas Coffey.

Outside the home, David Coffey, Coffey's father, told the officers that Coffey and his friend, Drew Jerrell, were inside. But, says David Coffey, he never gave the officers permission to enter the home. The officers, however, say that David Coffey did consent to them entering the home, and they did so. What happened outside the home, and the events that ensued inside, are at the crux of this dispute. And these facts, like the case more broadly, are deeply disputed.

Perhaps the lone point of agreement is this: When the officers found Coffey, he was asleep on a loveseat. According to Coffey, he was sleeping there after a long night and morning of drinking. Coffey's father says that the officers tried to wake Coffey by poking him in the chest, and that when poking proved unsuccessful, one of the officers punched Coffey in the face and yelled "stop resisting." Making matters worse, Coffey says, as he was waking, the officers flipped him onto his stomach and handcuffed him. Coffey says he did not resist the arrest. Nonetheless, he explains, the officers used his face to open the storm door as they dragged him

out of the house. The officers then placed Coffey in the backseat of the police car. The encounter left him with injuries to his ear, mouth, nose, and chin.

The officers describe these events differently. Officer Carroll, they say, upon discovering Coffey asleep on the loveseat, tapped Coffey on the shoulder a few times. When Coffey woke up, the officers say he grabbed Officer Carroll's finger and twisted it. The officers claim they attempted to arrest Coffey, but that he fought, kicked Officers Pranger and Pilchak, and pulled his arms away. When the officers eventually restrained Coffey, they handcuffed him and placed him in the backseat of a police car.

Coffey spent the next two nights in jail, at which point the county prosecutor approved a felony arrest warrant. After a preliminary hearing, at which Officers Carroll and Pranger testified, the trial court bound over Coffey. Eventually, Coffey was tried for three counts of assaulting a police officer. The jury acquitted him of the charges.

Coffey then turned the tables. Invoking 42 U.S.C. § 1983, he filed his own action against the officers and the City of Taylor. Coffey alleged that the officers, under the supervision of the City, violated Coffey's constitutional rights by engaging in conduct amounting to unlawful entry, excessive force, and malicious prosecution. By stipulation, the suit against the City was dismissed, and the claims against the officers proceeded through discovery.

Following discovery, the officers moved for summary judgment on the basis of qualified immunity. The district court granted parts of their motion and denied other parts. The court found there existed a material dispute of fact over whether the officers unlawfully entered Coffey's home, whether the officers used excessive force when arresting him, and whether Officers Carroll and Pranger influenced or participated in the decision to prosecute Coffey for assaulting a police officer. But the district court found no issue of material fact as to whether Officer Pilchak (unlike the other two officers) influenced or participated in the decision to prosecute Coffey, primarily because Pilchak did not testify at Coffey's preliminary hearing. Accordingly, the district court entered judgment in Pilchak's favor on Coffey's malicious-prosecution claim.

The officers appealed the district court's order partially denying their motion for summary judgment. Coffey has not done the same with respect to the district court's partial grant of summary judgment to Officer Pilchak.

## II. JURISDICTION

Before turning to the merits of the appeal, we must first consider our jurisdiction. Unlike our practice with respect to most interlocutory appeals, we have jurisdiction to hear interlocutory appeals by government officials challenging a denial of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985). But, generally speaking, those appeals must sound in law, not fact. After all, it is equally true that at this intermediate step, other than in instances where the plaintiff's version of the facts is "blatantly contradicted" by the record such that it is "demonstrably false," we do not have jurisdiction to resolve on an interlocutory basis disagreements over the district court's reading of the factual record. *Diluzio v. Village of Yorksville*, 796 F.3d 604, 609 (6th Cir. 2015).

So, we must ask at the outset, is this appeal one of law, which we can hear now, or one of fact, which, save for a narrow band of cases, we cannot? At times, the officers' arguments take aim at the factual record. For example, they argue their conduct was justified because Coffey resisted arrest, a fact Coffey contests. As Coffey's version of the events is not blatantly contradicted by the record, these fact-based arguments are not appropriate for our interlocutory resolution.

But other arguments present "a series of strictly legal questions." *Phelps v. Coy*, 286 F.3d 295, 298–99 (6th Cir. 2002). For instance, does Coffey's unlawful-entry claim fail because the officers entered Coffey's home while in hot pursuit? *Stanton v. Sims*, 571 U.S. 3, 6 (2013) ("[F]ederal and state courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home without a warrant while in hot pursuit of that suspect."). Is the evidence supporting Coffey's excessive-force claim inadmissible because it is not based on personal knowledge? *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

or declarant is competent to testify on the matters stated."). And does Coffey's malicious-prosecution claim fail because he did not show that the officers influenced or participated in the decision to prosecute him? *See Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007) (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 444–45 (6th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006)). Because "these are the kind of questions that may be raised by interlocutory appeal . . . [,] we have jurisdiction" here. *Phelps*, 286 F.3d at 298–99; *see also Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). We will, however, entertain the officers' arguments only to the extent they challenge the district court's legal determinations. We "must ignore the defendant's attempts to dispute the facts" as read by the district court. *Bunkley v. City of Detroit*, 902 F.3d 552, 560 (6th Cir. 2018) (internal citations omitted).

## III. ANALYSIS

### A. Standard Of Review

The qualified immunity doctrine protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In resolving issues of qualified immunity, our case law affords something to everyone involved. For government officials named as defendants, our cases instruct that their qualified immunity assertion be addressed early in the proceeding. That is so because qualified immunity is "an immunity from suit rather than a mere defense to liability," and "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526 (emphasis deleted). For plaintiffs challenging qualified immunity assertions, our cases afford them a favorable standard of review of the record. At this interlocutory stage, we take "the most favorable view of the facts to the plaintiff." *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011) (internal quotation marks omitted). And for ourselves, we are afforded some latitude in reviewing a summary judgment decision addressing qualified immunity. We review that decision "*de novo* because application of this doctrine is a question of law." *Nelson v. City of Madison Heights*, 845 F.3d 695, 699 (6th Cir. 2017) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 399 (6th Cir. 2009)) (italics in original) (internal quotations omitted).

Our review is twofold. We must (1) "determine if the facts alleged make out a violation of a constitutional right," and (2) "ask if the right at issue was 'clearly established' when the event occurred such that a reasonable [official] would have known that his conduct violated it." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). These steps may be addressed in any order, and the official need only prevail on one of them to be granted qualified immunity. *Id*. (citing *Pearson*, 555 U.S. at 236).

**B. The Officers Are Not Entitled To Summary Judgment On Coffey's Unlawful-Entry Claim.**

Coffey argues that the officers unlawfully entered his home on the day they arrested him. Lacking a warrant, the officers attempt to justify their search on a host of alternative grounds: Coffey's father consented to their entry, Coffey was in public view (and thus not actually "at home"), and the entry occurred while the officers were in "hot pursuit" of Coffey. The district court determined there was an issue of material fact as to whether Coffey's father, David, consented to the officers entering the home, rejected the other two grounds purportedly justifying the search, and denied the officers summary judgment on this claim. We agree.

> *1. Reading The Record In The Light Most Favorable To Coffey, A Reasonable Jury Could Find That The Officers Violated The Constitutional Prohibition Against Unlawful Entry.*

For Fourth Amendment purposes, the search here occurred on sacred ground. "[T]he Fourth Amendment has drawn a firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573, 590 (1980). A government official may knock on a person's front door and try to initiate a consensual entry. *See United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005). But absent consent, and in the absence of a warrant or exigent circumstances, the Fourth Amendment prohibits the official from entering the home. *Cummings v. City of Akron*, 418 F.3d 676, 685 (6th Cir. 2005).

### a. Whether The Officers Had Consent To Enter Coffey's Home Is An Issue Of Material Fact.

If David Coffey had authority to consent to the officers' entrance, and if he in fact did consent, the officers' search satisfied the Fourth Amendment. *See United States v. Matlock*, 415 U.S. 164, 169–71 (1974). The problem is, as the district court recognized, even assuming David Coffey did have such authority, we do not know whether he in fact consented. The officers argue that he did. But David Coffey testified that he did not. Since this is a dispute of material fact, and neither side's testimony can be easily discredited, we do not have jurisdiction to settle the dispute at this stage.

### b. Coffey Had A Reasonable Expectation Of Privacy When He Was In His Home.

Regardless whether there was consent, the officers alternatively argue they are entitled to summary judgment on a different legal and factual basis. The controlling law? Relying on *United States v. Santana*, 427 U.S. 38 (1976), the officers argue that one who is exposed to public view is not deemed inside a home for purposes of the Fourth Amendment. And the relevant fact? Coffey, they say, was close to his front door when the officers arrived.

Unfortunately for the officers, the law is not entirely as they say. *Santana* stands for the proposition that a person in the doorway of a home is "exposed to public view," meaning the person does not have a reasonable expectation of privacy for Fourth Amendment purposes. But *Santana* contrasts standing fully "exposed to public view, speech, hearing, and touch as if [a person] had been standing completely outside her house" with being "merely visible to the public" in some respect. *Id*. at 42. In other words, close to the doorway is not close enough when a search and seizure is premised upon *Santana*'s public-view exception.

Nor do these facts, when assessed in the light most favorable to Coffey, the non-moving party, suggest that Coffey was in the doorway when the officers arrived. At that moment, the parties agree, Coffey was sleeping on a loveseat. And that's not something you ordinarily find in a doorway. Coffey says it was in fact inside the home, and even the officers say that Coffey was in "close proximity" to the doorway rather than in the doorway. As a result, we must assume at this stage that Coffey was not fully visible to the officers until they were several feet inside the

house. These collective flaws doom the officers' public-view-theory-based summary judgment argument.

### c. The Officers Were Not In Hot Pursuit Of Coffey.

As a final justification for the search, the officers contend they were in "hot pursuit" of Coffey, meaning a warrant was not required before they could enter Coffey's home. The law, they say, supports a "hot pursuit" exception to the Fourth Amendment, justifying their warrantless entry. Alternatively, for purposes of qualified immunity, the officers say it is not clearly established that entry into a misdemeanor-suspect's home when officers are in hot pursuit constitutes an unreasonable search.

As a threshold matter, Coffey contends that the "hot pursuit" argument was not raised at all, meaning the argument is forfeited. Forfeiture is oftentimes a delicate issue. On the one hand, we do not want to reward a party for hiding the ball from the district court. We rely on district courts to tackle issues in the first instance, and we cannot expect them to do so when issues are overlooked by the parties. On the other hand, we do not want to flunk a party simply because an issue was inartfully raised below. This case is a prime example of the challenge in resolving forfeiture arguments: While there is no reference to exigent circumstances in the officers' motion for summary judgment or statement of facts, the exigent-circumstance exception was discussed briefly at the summary-judgment hearing. So was the argument forfeited? Because the officers' hot pursuit arguments squarely fail on the merits, we leave this type of forfeiture analysis for another day.

As to the merits, the "hot pursuit" justification has been recognized as an exception to traditional search and seizure law. The justification has been invoked in instances where an officer without a warrant justifiably chases a suspect into a private home when the criminal has fled arrest in a public place. *Warden v. Hayden*, 387 U.S. 294, 298–99 (1967). "The 'pursuit' begins when police start to arrest a suspect in a public place, the suspect flees and the officers give chase." *Smith v Stoneburner*, 716 F.3d 926, 931 (6th Cir. 2013) (citing *Cummings v. City of Akron*, 418 F.3d 676, 686 (6th Cir. 2005)). "[T]he emergency nature of the situation," turns an

ordinary pursuit into a "hot" one, creating the need for "immediate police action," justifying what might otherwise be an illegal search and seizure. *Cummings*, 418 F.3d at 686.

This does not remotely describe the officers' entry into Coffey's home. It was neither "hot" nor in "pursuit," in any fair sense of those words. The sequence of events lacked an emergency. At most, Coffey had attempted (and failed) to commit a non-violent property crime earlier in the day, meaning that when the officers arrived at his house sometime later, their pursuit was lukewarm at best. Nor were the officers truly in pursuit of Coffey, as that term is understood in the case law. Pursuit is defined as an effort to catch and detain an individual following an attempted arrest and subsequent escape. *See Stoneburner*, 716 F.3d at 931. But here, the officers encountered Coffey for the first time *after* they entered the home; it was only then that they began to arrest him. In other words, this was not pursuit following a failed arrest. The district court thus correctly concluded that the search was not justified by an exigent emergency.

### 2. The Right Against Unlawful Entry Is Clearly Established.

We likewise reject the officers' argument that no clearly established law prohibited them from entering Coffey's home. When determining whether an asserted right is "clearly established" for purposes of actions under § 1983, we are careful to not define rights "at a high level of generality." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). To do so runs the risk of making any and every "right" one that is "clearly established." Rather, to be fair to well-intentioned public officials, we require that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, the district court defined the right at issue as the Fourth Amendment right against an officer entering a person's home without a warrant; doing so makes the search presumptively unlawful. *See Payton*, 445 U.S. at 586 ("[A] basic principle of Fourth Amendment law, that searches and seizures inside a home without a warrant are presumptively unreasonable." (internal quotations omitted)). That Coffey was suspected of committing only a misdemeanor raises the bar for law enforcement, erecting a "double presumption" against warrantless entry,

one, that a warrant is ordinarily necessary, and two, that a misdemeanor offense is not serious enough to justify an otherwise unreasonable search. *See Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984) ("When the government's interest [in the entry] is only to arrest for a minor offense, th[e] presumption of unreasonableness is difficult to rebut . . . ."). This "double presumption" is well settled. Indeed, six years ago we observed that the "double presumption" had been clearly established by the Supreme Court for more than 25 years. *Stoneburner*, 716 F.3d at 933. By the time the officers entered Coffey's home then, the relevant law had been clearly established for more than three decades, contrary to the officers' contention.

To sum up, the officers did not have a warrant to enter Coffey's home, there were no exigent circumstances identified by the officers justifying their entrance, and there is an issue of material fact as to whether David Coffey gave the officers consent to enter. If the issues of fact are ultimately resolved in Coffey's favor, the officers violated the clearly established constitutional prohibition against unlawful entry. Thus, the district court correctly denied summary judgment to the officers on Coffey's unlawful-entry claim.

## C. The Officers Are Not Entitled To Summary Judgment On Coffey's Excessive-Force Claim.

Regardless whether the officers' search was reasonable under the Fourth Amendment, Coffey argues that the officers used excessive force when arresting him. Finding that Coffey submitted admissible evidence sufficient to create an issue of material fact as to whether the force used by the officers was excessive, the district court denied the officers qualified immunity as to Coffey's excessive-force claim. We agree with the district court's legal conclusion that Coffey's evidence was admissible; we lack jurisdiction to entertain the officers' fact-based arguments, and thus ignore those arguments in resolving this appeal.

### 1. *Coffey's Evidence In Support Of His Excessive-Force Claim Is Admissible Based On Personal Knowledge.*

The officers raise a threshold legal issue: Did the district court err in considering the evidence that Coffey submitted in support of his excessive-force claim where none of the evidence was based on personal knowledge? Coffey had two witnesses testify on his behalf—himself and his father. The officers argue that Coffey has no personal knowledge of the events

because he cannot remember what happened and because he was intoxicated. And as for his father, the officers say he too has no personal knowledge because he had an obstructed view of the relevant events. In the absence of reliable evidence supporting Coffey's claim, the officers assert they are entitled to summary judgment.

We see no error in the district court's legal conclusions. First, whether Coffey consumed alcohol earlier that day and the previous day would seem to go to the credibility of Coffey's testimony, not its substance. *See* Fed. R. Evid. 601 (explaining that whether a person was allegedly intoxicated is an issue of credibility to be determined by the jury). Second, the notion that Coffey had no memory of the relevant events is belied by the fact that he testified to events occurring after he woke up. Finally, while David Coffey did testify at his deposition that he had an obstructed view of part of the incident, he would of course have personal knowledge of the things he could see. Accordingly, we agree with the district court that Coffey's evidence is admissible. To the extent the officers challenge the credibility of Coffey's evidence, we lack jurisdiction to entertain those fact-based arguments.

> *2. Viewing The Evidence In The Light Most Favorable To Coffey, A Reasonable Jury Could Conclude That The Officers Used Excessive Force When Arresting Him.*

Claims that an officer used excessive force when arresting a person are "analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). In applying that standard, we ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. The contours of this reasonableness inquiry admittedly are somewhat undefined, as the test "is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). But one aspect of the inquiry is settled: "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 20–22 (1968)).

Taking all of this together, our bottom-line inquiry is whether the totality of the circumstances justifies a particular level of force. *Mitchell v. Schlabach*, 864 F.3d 416, 421 (6th

Cir. 2017). Factors to consider in making this inquiry include (but are not limited to) "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. While weighing those factors is a legal question upon which we can rule, we lack jurisdiction to hear arguments quibbling with the district court's reading of the factual record.

Considering the *Graham* factors, a jury reasonably could conclude the officers' conduct reflected excessive force:

*Severity of the crime.* The officers were investigating Coffey for an alleged violation of M.C.L. § 750.356a(2)(b)—a misdemeanor offense of attempted larceny from a motor vehicle. Generally speaking, a nonviolent misdemeanor offense is not a particularly serious crime. *Brown v. Chapman*, 814 F.3d 447, 459 (6th Cir. 2016); *Goodwin v. City of Painsville*, 781 F.3d 314 (6th Cir. 2015); *Thomas v. Plummer*, 489 F. App'x 116, 126 (6th Cir. 2012).

*Immediate threat to the safety of the officers or others.* David Coffey testified that his son was asleep when officers awoke him by punching him in the face. Coffey testified that he woke up while being turned onto his stomach for purposes of being handcuffed. Coffey adds that, once he was handcuffed, the officers then used his head and face to open a storm door.

The officers respond that Coffey was resisting arrest, thereby threatening their safety. But we ignore this fact-based dispute; nothing in the record "blatantly contradicts" Coffey's claim that he was not resisting—the lone basis, theoretically, for us to take up the issue. *See Bunkley*, 902 F.3d at 560. Given the district court's reading of the factual record and taking Coffey's assertions as true, it is difficult to see how he was an immediate threat to the officers at the time it is alleged they used excessive force. *See, e.g.*, *Thomas*, 489 F. App'x at 127 (holding that officer's use of a taser was unreasonable on a person kneeling with her hands over her head).

*Actively resisting arrest or attempting to evade arrest by flight.* According to the officers, Coffey grabbed one officer's finger and kicked other officers. Coffey disputes these claims, and adds that even if he did the things alleged, neither act was done "intentionally." For purposes of summary judgment, the district court accepted Coffey's version of events. As that

telling is not "blatantly contradicted" by the record, we have no basis to overturn the decision below.

To sum up, after dismissing any argument related to the district court's reading of the facts, the *Graham* factors on balance support the conclusion that the officers arguably acted in an objectively unreasonable manner.

*3. The Right To Be Free From Excessive Force Is Clearly Established Federal Law.*

Having determined that a reasonable jury could conclude that the officers violated Coffey's constitutional rights, we must also determine whether the right at issue was clearly established. On this question, the analysis is relatively straightforward. A suspect has a clearly established constitutional right to be free from the use of physical force by police officers when he is not resisting efforts to apprehend him. *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012) (summarizing cases from 2004 onwards in which "the suspects were compliant or had stopped resisting" and noting that excessive force was found in such cases). Drawing the line at a suspect's active resistance defines the right at a level of particularity appropriate for a claim pursued under § 1983. *Id*.

Measured against this legal backdrop, Coffey's claim survives the officers' qualified immunity defense. He has articulated a specific, precise, and established constitutional right to be free from excessive force. Accordingly, the district court did not err in denying the officers qualified immunity and summary judgment on this claim.

**D. Officers Carroll And Pranger Are Not Entitled To Summary Judgment On Coffey's Malicious-Prosecution Claim.**

Lastly, Coffey asserts that his Fourth Amendment rights were violated by the officers because they subjected him to malicious prosecution by way of their false testimony at his preliminary-examination hearing. Only the two officers testified at the hearing. Coffey alleges they falsely testified that he assaulted them. The district court found there was an issue of material fact as to whether that testimony was false. Likewise, the district court concluded that Coffey had a clearly established right to be free from prosecution tainted by the false testimony of a police officer when that testimony formed the basis of the probable cause to prosecute

Coffey. With those two rulings in mind, the court denied summary judgment to the two officers, leaving the factual nature of those claims to be resolved at trial.

> 1. *Reading The Record In The Light Most Favorable To Coffey, A Reasonable Jury Could Conclude The Officers Violated Coffey's Right To Be Free From Malicious Prosecution.*

Fourth Amendment jurisprudence clearly establishes that one who has "made, influenced, or participated in the decision to prosecute" another may not do so maliciously. *King v. Harwood*, 852 F.3d 568, 582–83 (6th Cir. 2017). In seeking to validate a claim for malicious prosecution under § 1983, a plaintiff must prove: (1) that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute," *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); (2) that there was a lack of probable cause for the criminal prosecution, *id.*; (3) that the legal proceeding resulted in the plaintiff suffering a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, and distinct from the initial seizure, *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007); and (4) the criminal proceeding must have been resolved in the plaintiff's favor. *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).

Given the nature of Coffey's malicious-prosecution claim, our decision in *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), is instructive. We held there that an officer can influence or participate in the decision to prosecute a defendant when the officer testifies at a preliminary hearing in which the decision was made to bind over the defendant. *Id.* at 313–14. *See also Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017) (the Fourth Amendment right to be free from malicious prosecution is violated when "a judge's probable-cause determination" justifying one's detention "is predicated solely on a police officer's false statements.").

In view of this precedential backdrop, we cannot say the district court erred in concluding that Coffey had submitted sufficient evidence from which a jury could conclude that Officers Carroll and Pranger violated Coffey's Fourth Amendment right to be free from malicious prosecution. As the two officers testified at the preliminary hearing, a jury reasonably could conclude that the officers influenced or participated in the decision to prosecute Coffey. And viewing the evidence in the light most favorable to Coffey, there is an issue of material fact as to whether the officers' testimony was false.

The officers challenge only the first element of the malicious-prosecution claim, namely, whether the officers made, influenced, or participated in the decision to prosecute Coffey. They note that in *Skousen v. Brighton High School*, 305 F.3d 520 (6th Cir. 2002), we reversed a district court's denial of summary judgment in favor of a police officer accused of malicious prosecution. But compare that case to this one. In *Skousen*, the officer's alleged role in the purported malicious behavior included interviewing witnesses, writing up a police report, and then submitting that report to the prosecutor's office; there was no evidence the officer caused the plaintiff to be prosecuted. *Id*. at 524–25, 529. That omission from *Skousen* is critical. Here, the officers were not only the complaining witnesses regarding the assault of a police officer, but they also then testified to that effect at the preliminary hearing.

*2. The Right To Be Free From Malicious Prosecution Is Clearly Established.*

We likewise agree with the district court regarding the existence of a right to be free from malicious prosecution. While clearly established, the right is a narrow one. *Johnson v. Moseley*, 790 F.3d 649 (6th Cir. 2015). As we have previously said, "[a] police officer violates a suspect's clearly established right to freedom from malicious prosecution under the Fourth Amendment 'only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause.' " *Id*. at 655 (quoting *Newman v. Township of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014)). Providing false testimony (both written and oral), as alleged here, could have resulted in Coffey's arrest and prosecution without probable cause. Reading the facts in the light most favorable to Coffey, a reasonable jury could conclude that Officers Carroll and Pranger deliberately provided untrue testimony at the preliminary hearing, which resulted in the court finding probable cause to continue legal proceedings against Coffey. Accordingly, the district court did not err in denying the two officers' motion for summary judgment on Coffey's malicious-prosecution claim.

## IV. CONCLUSION

For these reasons, we **AFFIRM** district court's judgment and remand for further proceedings.