RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0039p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

LINDA MOSER,

                    *Plaintiff-Appellant*,

   *v.*

ETOWAH POLICE DEPARTMENT,

                    *Defendant*,

CITY OF ETOWAH, TENNESSEE; TIM DAVIS, JR.,

                    *Defendants-Appellees*.

> No. 21-5162

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:18-cv-00225—Charles Edward Atchley, Jr., District Judge.

Argued: October 27, 2021

Decided and Filed: March 3, 2022

Before: ROGERS, STRANCH, and DONALD, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** H. Franklin Chancey, CHANCEY – KANAVOS, Cleveland, Tennessee, for Appellant. Philip Aaron Wells, ROBINSON, SMITH & WELLS, PLLC, Chattanooga, Tennessee, for Appellee City of Etowah, Tennessee. Benjamin K. Lauderback, WATSON, ROACH, BATSON & LAUDERBACK, P.L.C., Knoxville, Tennessee, for Appellee Tim Davis, Jr. **ON BRIEF:** H. Franklin Chancey, CHANCEY – KANAVOS, Cleveland, Tennessee, for Appellant. Philip Aaron Wells, Ronald D. Wells, ROBINSON, SMITH & WELLS, PLLC, Chattanooga, Tennessee, for Appellee City of Etowah, Tennessee. Benjamin K. Lauderback, WATSON, ROACH, BATSON & LAUDERBACK, P.L.C., Knoxville, Tennessee, for Appellee Tim Davis, Jr.

_____

**OPINION**

_____

ROGERS, Circuit Judge.   Plaintiff Linda Moser claims that a police officer used excessive force on her when she was trying to tell another officer that he was arresting the wrong person.   Her daughter, Johnnie Moser, had fled to a neighbor's house one night after Johnnie Moser's boyfriend physically assaulted Johnnie.   Officers Tim Davis and Austin Parton were investigating at the neighbor's house when Linda Moser approached, visibly upset and worried about the condition of her daughter.   Parton observed Johnnie Moser's boyfriend following behind Linda Moser and moved to arrest him.   Linda Moser began shouting that Parton had the wrong man and touched Parton's arm.   At this point, Officer Davis stepped onto the porch, grabbed Linda Moser, took her to the ground, and then pinned her there, which resulted in a fractured hip and femur.   Linda Moser brought this action against Davis and the City of Etowah. The district court granted the defendants' motion for summary judgment.   Viewing the facts in the light most favorable to Moser, however, Davis violated her clearly established right to be free from injury-threatening physical force when not actively resisting an arrest.

Plaintiff Linda Moser lived with her daughter Johnnie Moser.   One night in September 2017, Johnnie Moser fled to a neighbor's house after Johnnie's boyfriend, James Ferguson, physically assaulted Johnnie.   The neighbor, Charles Bearden, reported the domestic violence to the police, and Officers Tim Davis and Austin Parton from the Etowah Police Department were the first to arrive at Bearden's house.   Parton spoke with Johnnie Moser and Bearden to gather information about the incident, and Davis conducted a sweep of the outside of Bearden's house to look for the suspect.   Johnnie Moser identified Ferguson as her assailant and gave Parton a physical description of Ferguson.

Back at the Mosers' house, Ferguson entered Linda Moser's bedroom, woke her, and asked for Johnnie Moser's keys.   Ferguson told Linda Moser that her daughter had run off, and Linda Moser immediately got up and ran outside looking for her daughter.   Linda Moser ran toward Bearden's house after spotting an ambulance headed in that direction.   Ferguson followed

Linda Moser to Bearden's house and, when they both reached the porch of the house, Officer Parton recognized Ferguson as the individual that Johnnie Moser had identified as her assailant.

Parton also observed that Linda Moser was visibly upset and attempted to calm her down by telling her that her daughter was okay. Parton directed Moser to take a seat on the porch while she waited to see her daughter, but Moser did not comply with these directions. Having recognized Ferguson as the assailant, Parton stepped toward Ferguson and told him to turn around and place his hands behind his back. When Parton moved to detain Ferguson, Moser shouted "no" repeatedly, told the officers to leave Ferguson alone because he had not done anything, and stated that Ferguson was with her. Officer Davis was standing out in the yard observing the situation and began moving toward the porch as Moser started yelling. While Parton was attempting to detain Ferguson, Moser placed a hand on Parton. A firefighter on the porch moved toward Moser, presumably to separate her from Parton. Davis then stepped onto the porch, grabbed Moser, and took her to the ground on the porch. Davis stated repeatedly "you don't grab my guy." The body-camera footage does not clearly depict how Davis took Moser to the ground, but Moser claims that Davis grabbed her hair and threw her to the ground. Moser immediately stated that she was hurt.

Moser claims that, once Davis took her to the ground on the porch, he placed his knee on her back and applied his full weight to pin her down. The body-camera footage indicates that Davis could have kneeled on Moser for up to twenty-three seconds, and the footage does not clearly contradict Moser's claim that Davis kneeled on her. Despite this ambiguity in the body-camera footage, Davis asserts that the footage proves he did not press his torso on Moser and that he therefore could not have placed his full body weight on her. But the body-camera footage shows a shadow of Davis's figure that could depict him putting his leg or knee on Moser. Exh. 5, 10:41. Moser remained on the ground until she went to the hospital. At the hospital, Moser learned that she had a fractured hip and femur.

Moser was ultimately charged with, and pleaded guilty to, interfering with the arrest of another in violation of Tenn. Code Ann. § 39-16-602. Moser brought this action against the Etowah Police Department, Tim Davis, Austin Parton, Chief Armstrong, and the City of Etowah, alleging a variety of claims. The parties agreed to dismiss all of the defendants except Davis and

the City of Etowah. The district court granted summary judgment to Davis and the City of Etowah for all claims against them. In relevant part, the district court ruled that neither taking Moser to the ground nor pinning her to the ground amounted to excessive force because Moser was actively interfering with Parton's attempt to arrest Ferguson. In the alternative, the district court ruled that Davis was entitled to qualified immunity because it was not clearly established that either action constituted excessive force. Having concluded that Moser failed to state a constitutional violation for the use of excessive force, the district court granted summary judgment to the City of Etowah on the municipal-liability claim because Moser had not established an underlying constitutional claim. Moser appeals the district court judgment as to her excessive-force claim and her municipal-liability claim.

On appeal, we consider Moser's allegations as one excessive-force claim because Davis's actions cannot be meaningfully separated into two distinct uses of force. When Davis decided to intervene on the porch, he took Moser to the ground, and he immediately pinned her to the ground. Exh. 5, 10:29–10:50. In other words, Davis's alleged kneeling on Moser was effectively a continuation of his efforts to bring Moser to the ground. To be sure, we typically analyze "the subject event in segments when assessing the reasonableness of a police officer's actions." *Barton v. Martin*, 949 F.3d 938, 952 (6th Cir. 2020) (quoting *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)). On the other hand, however, we have considered immediately consecutive uses of force as one excessive-force claim when the plaintiff asserted that the uses of force were excessive for the same reasons. *See Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015). There, officers first tried to subdue the plaintiff with a knee strike and then proceeded to tase the plaintiff after the strikes were unsuccessful. *Id.* at 640. Because the plaintiff treated the two uses of force similarly, we considered them as one excessive-force claim. *Id.* at 641. Although here the parties treated these allegations as two separate excessive-force claims in their briefing, it is unclear how separating the claims affected the parties' analysis. Instead, the parties center their arguments on the criminal severity of Moser's actions and whether she was actively resisting arrest when Davis decided to take action. Since Davis's actions cannot be meaningfully separated into two different uses of excessive force, we consider Moser's allegations as one claim that Davis used excessive force to throw Moser to the ground and pin her there.

On appeal the parties differ as to the facts that a reasonable jury could find, and as to whether their version of the facts is legally sufficient to show a clearly established constitutional violation. We address the factual differences first.

Davis's argument on appeal relies on the absence of any dispute with respect to the following facts: there was a chaotic situation, with other citizens and medical personnel all confined in close quarters; Moser had four times been given a direct order to go sit down; Moser physically contacted the arresting officer and gave him commands to leave the suspect alone; Moser's contact "caused all involved parties to spin in a clockwise direction" and prevented the arresting officer from promptly handcuffing Ferguson; Moser raised her cellphone toward the arresting officer's head and face; and the force used against Moser resulted in no hair being pulled out, no bruises, no torn clothing and not even a red mark on her skin.

In contrast, however, Moser asserts that the body-camera footage shows that she put her hand on Parton softly enough that Parton did not remember feeling it, and that she urgently told him he had the wrong person. Davis reacted by grabbing her hair and taking her to the ground with enough force to break her hip, and kept his body weight on her for over twenty seconds. His contemporaneous statements were to the effect that "you don't grab my guy."

To the extent that these narratives differ, we take the facts in favor of the plaintiff as the non-moving party. *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020). We do so by giving full weight to any facts objectively compelled by the videotape. *See Scott v. Harris*, 550 U.S. 372, 379–81 (2007). Our careful and repeated view of the videotape does not compel the officer's version of the facts, to the extent that they differ from Moser's version.

More specifically, the body-camera footage shows Moser audibly upset and confused after she arrives at Bearden's porch. As Parton moved to arrest Ferguson, Moser, thinking that Bearden had assaulted her daughter, Exh. 2, 12:15–12:20, repeatedly yelled "no," then exclaimed, "[Ferguson] didn't do nothing," and "leave [Ferguson] alone, he is with me." Viewing these facts in a light most favorable to Moser as required at this stage, a reasonable juror could conclude that Moser's yelling was only an attempt to get Parton to listen to her explain (incorrectly) that Ferguson was innocent.

Moser alleges that she "put her right hand on the arm of Officer Parton," and Parton's own statements on the body-camera footage support Moser's contention. Parton stated, "I didn't even feel her on me. I didn't even know she was there" when he was explaining how he approached and arrested Ferguson. At that time, Parton did not indicate that Moser impeded his ability to arrest Ferguson in any way. A review of the body-camera footage does not clearly contradict Moser's assertion that she merely touched Parton's arm. In a subsequent deposition, Parton contradicted this evidence and claimed that he attempted to push Moser away because she was trying to pull Parton away from Ferguson. Contradictions in Parton's testimony must be resolved in Moser's favor at this stage, and a reasonable juror could conclude that Moser merely touched Parton and that the touch was so slight that Parton didn't even realize "she was there."

The body-camera footage also does not clearly contradict Moser's claim that Davis slammed Moser to the ground, and a reasonable juror could accept that factual assertion. Further, Moser claims that Davis kneeled on her using his full body weight to pin her to the ground. The body-camera footage indicates that Davis could have kneeled on Moser for up to twenty-three seconds, and the footage does not clearly contradict Moser's claim that Davis kneeled on her. Despite this ambiguity in the body-camera footage, Davis asserts that the footage proves that he did not press his torso on Moser and that he therefore could not have placed his full body weight on Moser. But the body-camera footage shows a shadow of Davis's figure that could depict him putting his leg or knee on Moser. A reasonable juror could therefore conclude that Davis put his full weight on Moser despite not touching her with his torso simply by bearing his weight on his knee to pin her to the porch. As a result, a reasonable juror could reject Davis's claim that he did not use any injury-threatening force at all against Moser.

On these facts, which of course may ultimately be rejected in whole or part by the jury, Davis violated a clearly established constitutional right, and Davis was therefore not entitled to summary judgment on the excessive-force claim. Of course, to prevail on an excessive-force claim, Moser must show that Davis's use of such force amounted to a violation of Moser's clearly established constitutional rights. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). By September 2017, it was clearly established in this circuit that a person has a constitutional right to be free from injury-threatening physical force when he or she is not actively resisting the

police, and Davis violated this right by taking Moser to the ground with such force that she broke two bones and then pinning her to the ground. Put another way, since a reasonable juror could conclude that Davis knew Moser was not actively resisting arrest, Davis was not entitled to throw Moser to the ground and pin her there.

This conclusion is most closely required by our decision in *Smith v. Stoneburner*, 716 F.3d 926 (6th Cir. 2013). One plaintiff was the mother of the other plaintiff, whom the defendant officer had been moving to arrest. *Id.* at 929. The mother told the officer not to touch her son and moved between them. *Id.* The officer collided with the mother, causing her to hit the side of the house. *Id.* There was a factual issue for the jury whether the collision was an inadvertent bump or whether the officer gratuitously shoved the mother against the house. *Id.* at 934. We held that this factual issue "ma[de] a difference" with respect to the mother's excessive-force claim. *Id.* The facts in this case are not materially distinguishable from *Stoneburner*. Here, Moser asserts that she merely touched Parton and shouted as he was attempting to arrest Ferguson. She further alleges that Davis responded by grabbing her by the hair and shoving her to the ground with such force that she broke her hip.

In further support, our precedents clearly establish that a suspect has a "constitutional right to be free from the use of physical force by police officers when he is not resisting efforts to apprehend him." *Coffey v. Carroll*, 933 F.3d 577, 589 (6th Cir. 2019) (citing *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012)); *see also Goodwin v. City of Painesville*, 781 F.3d 314, 328 (6th Cir. 2015) (quoting *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008)). Recognizing that we are "not to define clearly established law at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), we have held that "[d]rawing the line at a suspect's active resistance defines the right at a level of particularity appropriate for a claim pursued under § 1983." *Coffey*, 933 F.3d at 589. On the facts viewed in a light favorable to Moser, she had a clearly established right to be free from injury-threatening physical force when she was not actively resisting Officer Parton's attempt to arrest Ferguson.

The *Stoneburner* case is not distinguishable on the ground that, unlike in *Stoneburner*, Moser's attempt to stop the arrest of the Ferguson was "active resistance." Davis argues that his conduct does not amount to excessive force under the *Graham* factors for determining whether

police officer use of force is constitutionally excessive. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). But analyzing the *Graham* factors has developed a simple dichotomy in our precedent with respect to resisting arrest: "[w]hen a suspect actively resists arrest, the police can use [force] to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot." *Carter v. Carter*, 728 F. App'x 419, 423 (6th Cir. 2018) (alteration in original) (quoting *Rudlaff*, 791 F.3d at 642). The key question is therefore whether Moser actively resisted the police activity she objected to.

Davis argues that Moser actively resisted arrest because she admits that she touched Parton and simultaneously raised her other hand, which held her cell phone, somewhere around Parton's head. But some physical contact does not automatically rise to the level of active resistance. In *Smith v. City of Troy*, we concluded that a jury must decide whether a suspect's pulling his arm away from an officer during a hand-to-hand encounter was active resistance or minimal resistance. 874 F.3d 938, 945 (6th Cir. 2017). A reasonable juror could likewise conclude that Moser offered minimal resistance when she touched Parton's arm and raised her cell phone.

Davis also contends that Moser actively resisted arrest because she was refusing to obey Parton's commands and yelling at Parton to leave Ferguson alone. But Moser's yelling at Parton did not evidence an intent to physically interfere with the arrest. It is true that a person's non-compliance with officer's directions may rise to the level of active resistance when combined with "verbal hostility" or "a deliberate act of defiance." In *Goodwin*, we held that the plaintiff's refusal to exit his apartment after the officer asked him to do so was not active resistance. 781 F.3d at 323. We relied in part upon *Eldridge v. City of Warren*, 533 F. App'x 529, 534–35 (6th Cir. 2013), which held that repeatedly refusing an officer's order to exit a vehicle was only passive resistance. *Goodwin*, 781 F.3d at 323. *Eldridge* in turn distinguished cases where refusing to comply with officer instructions was "the final straw in a series of consciously-resistive acts, one of which included a statement that the suspect would 'fight the officers so that they would have a reason to kill him.'" *Eldridge*, 533 F. App'x at 534–35 (quoting *Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 94 (6th Cir. 2012)). Moser's statements are similarly distinguishable because a reasonable juror could conclude that her statements did not evidence

an intent to physically prevent Parton from arresting Ferguson nor did they evidence an intent to physically harm Officer Parton.

Davis further argues that Moser actively resisted arrest because Moser subsequently pleaded guilty to interfering with Ferguson's arrest in violation of Tenn. Code Ann. § 39-16-602. But Davis points to no caselaw where a guilty plea to obstruction of law enforcement conclusively established that a suspect actively resisted arrest. On the other hand, the plain language of Tenn. Code Ann. § 39-16-602 would support a conviction where a suspect only minimally resisted, like the plaintiff in *Smith* discussed above, and such minimal resistance alone does not justify the use of physical force sufficient to cause bodily injury. *See Smith*, 874 F.3d at 945. Moser's subsequent conviction is therefore not determinative of whether Moser actively resisted Parton's attempt to arrest Ferguson.

Moser finally contends that the district court erroneously granted qualified immunity to the City of Etowah. Municipal entities are not entitled to qualified immunity, and the district court made no such ruling; instead, the district court dismissed Moser's municipal-liability claim because it concluded that there was no underlying Fourth Amendment violation. Because Moser has sufficiently alleged an excessive-force violation, the basis for the district court's dismissal at present no longer obtains, and a remand for additional consideration is required.

For the foregoing reasons, we reverse the judgment of the district court with respect to Moser's excessive-force claim. In addition, we reverse the judgment of the district court as to the municipal-liability claim because Moser has sufficiently alleged an underlying constitutional violation. We remand this case for further proceedings consistent with this opinion.