NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0096n.06

Nos. 23-1535 / 24-1335

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 19, 2025
KELLY L. STEPHENS, Clerk

DAVID LITTLE, )
)
    Plaintiff-Appellee, )
)
)
v. )
)
)
CITY OF SAGINAW, MICHIGAN; STEVEN )
LAUTNER and JORDAN LADOUCE, Police )
Officers, )
)
    Defendants-Appellants. )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

Before: SUTTON, Chief Judge; KETHLEDGE and MURPHY, Circuit Judges.

KETHLEDGE, Circuit Judge. Two Saginaw police officers say they tracked footprints in the snow from the scene of a break-in to the doorstep of David Little. They arrested Little for vandalism, though the charges were later dropped. Little sued the officers—Steven Lautner and Jordan LaDouce—as well as the City of Saginaw, asserting claims under 42 U.S.C. § 1983 and under Michigan law. The defendants moved for summary judgment, which the district court denied. We affirm the denial of qualified immunity to the officers and dismiss the city's appeal.

I.

One evening in January 2020, Saginaw police received several reports of vandalism at local businesses. Two callers reported broken windows at a local law firm; one described the suspect as a black male wearing a tan hat and tan coat, while the other described a suspect wearing a gray hat and gray coat. Around this time, the burglar alarm at a nearby medical office went off, indicating that glass had been broken there too. Officer Steven Lautner went to the law firm, and

Officer Jordan LaDouce went to the medical office. Upon arrival, the officers surveyed the respective scenes, but neither saw any suspects. Lautner soon joined LaDouce at the medical office; and the officers determined that footprints at the scene of the medical office matched footprints that Lautner had seen at the law office. The officers began to track these footprints to try to find their suspect. The officers say that these footprints—which ran parallel to bicycle tracks that began 300 feet down the road—continued for four city blocks and ended at David Little's doorstep, which was about half of a mile from the medical facility.

At this point, Lautner turned on his body camera, knocked on Little's door, and waited for several seconds. Eventually, Little—a white man—answered the door. Lautner asked who lived at the apartment, and Little said it was just him. Lautner then asked Little, "Where's your bike at?" Little pointed inside and said, "In here." Lautner replied, "Okay, you do have a bike." Lautner then said that the officers were investigating some broken windows nearby, and asked Little whether he knew anything about that. Little said he had been at his boyfriend's house all day and had just gotten home. Lautner then asked whether Little had "some shoes that you may have been wearing outside that we tracked to your door."

At that point, Little turned and stepped further inside the apartment—and the officers followed him. Lautner immediately pointed to some shoes across the room, drying in front of a fan, and said: "Yeah, those shoes right there." Lautner handcuffed Little—just six seconds after having entered the apartment and having seen the shoes only from across the room. Several minutes later, Lautner picked up a shoe and said the shoeprint at the crime scene was "really similar to that." Lautner then read Little his rights and took him to jail. Only later did Lautner and LaDouce return to the crime scene to compare Little's shoes with the prints there.

Little spent five days in jail before he was released on bond. He was charged with two counts of malicious destruction of a building. MICH. COMP. LAWS § 750.3805. More than a year later, prosecutors dropped the charges when they realized that the window-breaking suspect was black rather than white. Little brought this suit, alleging several Fourth Amendment violations under 42 U.S.C. § 1983 and several tort claims under state law. Both parties moved for summary judgment. As relevant here, the district court denied immunity to the officers, and granted summary judgment to Little as to liability on four claims: unlawful entry, unlawful arrest, unlawful seizure of the shoes, and unlawful imprisonment. The court also granted summary judgment, as to liability, to Little on his claim against the city. This appeal followed.

## II.

## A.

The officers argue that they are entitled to qualified immunity from Little's claim that they unlawfully entered his home. Ordinarily, police officers may not enter a suspect's home without a warrant. *Lange v. California*, 594 U.S. 295, 301 (2021). But a suspect can consent to entry without one. *See Coffey v. Carroll*, 933 F.3d 577, 585 (6th Cir. 2019). Here, undisputedly, the officers never asked for consent to enter Little's apartment. Nor, undisputedly, did he offer any such consent verbally. Yet the officers say that Little made a "gesture" that invited them to come inside. The district court saw no such gesture on the body-camera footage; and suffice it to say that neither do we. The officers' entry violated the Fourth Amendment.

That leaves the question whether Little's Fourth Amendment rights (as to the entry) were "clearly established in light of the specific context of the case." *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011). That means the law must have been clear enough that every reasonable official would understand that what he is doing is unlawful under the circumstances. *Ashcroft v. al-Kidd*,

563 U.S. 731, 741 (2011). Here, nobody disputes that the relevant rule—that the officers could enter Little's home only with consent—was well-settled. *See, e.g.*, *Smith v. Stoneburner*, 716 F.3d 926, 930 (6th Cir. 2013). And as a factual matter we see nothing in the record that would allow a reasonable officer to think that Little had in fact expressed such consent. The district court was right to deny qualified immunity on this claim.

B.

The officers likewise argue they are entitled to qualified immunity from Little's claim that they unlawfully arrested him. An arrest violates the Fourth Amendment when the arresting officer lacks probable cause. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). Probable cause requires "reasonable grounds for belief" that someone has committed a crime. *Id.* at 306.

Here, the only facts that could support such a determination were these: that a bicycle track and shoeprints in the snow led from somewhere near the sites of broken windows to Little's doorstep; that Little was the only person who lived there; that he owned a bicycle; and that he had a pair of shoes drying in front of a fan on a snowy Michigan night. But those facts showed only that Little might have been present somewhere near the crime scene. And the law has long been clear that one's "mere presence" at a crime scene is not enough to establish probable cause. *Harris v. Bornhorst*, 513 F.3d 503, 515 (6th Cir. 2008). Hence the officers were not entitled to qualified immunity as to Little's arrest.

C.

The officers also argue that they are entitled to qualified immunity from Little's claim that they unlawfully seized his shoes. Warrantless seizures inside a home "are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The officers argue, however, that the Supreme Court's holding in *United States v. Place*, 462 U.S. 696 (1983), afforded them

some reason to think their seizure of the shoes was lawful. There, the Court held that an officer may "briefly" seize items without a warrant or probable cause to investigate the circumstances that aroused his suspicion. *Id.* at 706. But the seizure must be supported by "reasonable and articulable suspicion," and must be as short as practicable under the circumstances. *United States v. Sanders*, 719 F.2d 882, 887 (6th Cir. 1983).

The latter condition was obviously not met here. The officers could have compared the prints on Little's shoes to those in the snow almost immediately after Little was handcuffed; yet the officers did not make that comparison until long afterward. Moreover, unlike *Place*—where the seizure lasted 90 minutes—the officers here never returned Little's shoes. Thus, the officers are not entitled to qualified immunity on this claim either. *See Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 308 F.3d 523, 546 (6th Cir. 2002); *United States v. McLevain*, 310 F.3d 434, 443 (6th Cir. 2002).

## D.

The officers contest the district court's denial of governmental immunity from Little's unlawful-imprisonment claim, which arises under state law. We have jurisdiction over that issue in this appeal. *See Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 408 (6th Cir. 2007). Here, under Michigan law, whether the officers are entitled to governmental immunity as to this claim depends on whether they acted in good faith. *See Odom v. Wayne County*, 760 N.W.2d 217, 228 (Mich. 2008). The officers must have "honestly believed" they had probable cause to arrest Little. *Id.* at 229. And here, for the reasons already stated above, the paucity of evidence—not remotely enough for probable cause—belies the officers' contentions that they honestly believed in their authority to arrest Little.

E.

Finally, the city argues it was entitled to summary judgment as to Little's claim that it failed to train its officers adequately regarding the Fourth Amendment. But we lack jurisdiction to review that decision in this appeal, given our conclusion that the officers were not entitled to qualified immunity. *See King v. City of Rockford*, 97 F.4th 379, 399 (6th Cir. 2024).

\* \* \*

The district court's May 19, 2023, and March 29, 2024, orders denying qualified immunity are affirmed.